## UNITED STATES *v.* FOX.

1. By a statute of New York, a devise of lands in that State can only be made to natural persons and to such corporations as are created under the laws of the State and are authorized to take by devise. A devise, therefore, of lands in that State to the government of the United States is void.
2. The several States of the Union possess the power to regulate the tenure of real property within their respective limits, the modes of its acquisition and transfer, the rules of its descent, and the extent to which a testamentary disposition of it may be exercised by its owners.

ERROR to the Court of Appeals of the State of New York.

In February, 1870, Charles Fox, of the city of New York, died possessed of certain personal and real property situated in the State of New York. By his last will and testament, he devised and bequeathed the whole property, after the payment of his debts, to the government of the United States, for the purpose of assisting to discharge the debt created by the war of the Rebellion. By the government of the United States, the body politic, the nation known as the United States was meant. Upon the petition of the District Attorney of the United States, the will was presented for probate before the Surrogate of the city and county of New York. The infant heirs of the deceased contested the will. The Surrogate decreed that the will was inoperative and void as a devise of real estate; that the United States could not lawfully take and hold the real estate as devisee under the will, in trust or otherwise, and that it descended to the heirs-at-law. He at the same time decided that the will was valid and operative as to the personal estate of the testator, and that the United States was the sole legatee; and accordingly admitted the testament to probate as a will of personal estate only. On appeal from the Surrogate, this decree was affirmed by the Supreme Court, and afterwards by the Court of Appeals of the State. The case was then brought here.

*Mr. Assistant Attorney-General Smith* for the United States.

1. Though there is in the Federal Constitution no express delegation of power to accept a devise, it is submitted that the power of acquiring property for public purposes in any part of the country, by all the usual methods known to the law, is an

essential attribute of the sovereignty of the United States, without which it cannot efficiently exercise its functions.   There is no distinction in this respect between real and personal property, or between devises and conveyances.   If a State can forbid the government taking by devise, it may forbid its taking by grant.

Marshall, C. J., in his opinion in *United States* v. *Maurice*, 2 Brock. 109, answered the objection that the United States could enter into no contract not previously directed by statute : " The United States is a government, and consequently a body politic and corporate, capable of attaining the objects for which it was created by the means which are necessary for their attainment.   This great corporation was ordained and established by the American people, and endowed by them with great powers for important purposes.   Its powers are unquestionably limited ; but while within those limits, it is as perfect a government as any other, having all the faculties and properties belonging to a government, with a perfect right to use them freely, in order to accomplish the objects of its institutions.   It will certainly require no argument to prove that one of the means by which some of these objects are to be accomplished is contract ; the government, therefore, is capable of contracting, and its contracts may be made in the name of the United States."

This court indicated its assent to these propositions in *United States* v. *Tingey*, 5 Pet. 128, where it held, " Upon full consideration of the subject, we are of opinion that the United States have such a capacity to enter into contracts.   It is, in our opinion, an incident to the general right of sovereignty," &c.   It had long before been decided, that, without legislative authority first obtained, suit might be maintained by the United States upon such a contract.   " It would be strange to deny to them a right which is secured to every citizen of the United States." *Dugan* v. *United States*, 3 Wheat. 181 ; *Cotton* v. *United States*, 11 How. 231.   Upon judgments recovered in such suits it is an everyday occurrence for the United States to seize, hold, and sell land.   *United States* v. *Bradley*, 10 Pet. 359 ; *United States* v. *Lynn*, 15 id. 311.   In 1870, referring to *United States* v. *Tingey*, this court said : " The decision was put upon the ground

that the government had the capacity to make the contract; that the United States were a body politic, and that, as incident to the general right of sovereignty, it was competent to enter into any contract not prohibited by law, and found to be expedient in the just exercise of the powers confided to it by the Constitution. *Dugan* v. *United States*, 3 Wheat. 172, was referred to as sustaining this proposition. It was remarked, that a different principle would involve a denial to the general and the State governments of the ordinary rights of sovereignty." *United States* v. *Hodson*, 10 Wall. 407.

Except as involved in the power to borrow money and purchase sites for public works, the power to make contracts is not expressly given by the Constitution, nor is it, in these decisions, placed upon any particular provision of that instrument, but is implied from the existence of a sovereignty to which it is necessarily incident.

There is no express grant of power to take land for public uses by right of eminent domain. For more than three-quarters of our national existence it was exercised only through the assent and agency of the several States. But, though long dormant, it has always existed, and is implied in the very idea of sovereignty. *Kohl* v. *United States*, 91 U. S. 371 *et seq.*

By the exercise of the right of eminent domain land is taken for public uses. If this result can be lawfully secured by a process *in invitum*, it would certainly seem that the United States might also accept land when voluntarily donated or devised. Its power to take and hold land, in order to secure, liquidate, or compromise debts due to it, has been recognized by legislation and judicial decision ever since the early days of the Republic. The validity of the statutes giving priority to such debts is inferred from the clause relating to the payment of the public debt, because this is an appropriate means of accomplishing this object. *United States* v. *Fisher*, 2 Cranch, 396; *Metropolitan Bank* v. *Van Dyck*, 27 N. Y. 437. The act of July 11, 1798, c. 72, § 15, 1 Stat. 594, gives a lien upon the real estate of public debtors, provides for the sale of it, and defeats the lien of prior judgment creditors. *Thelusson* v. *Smith*, 2 Wheat. 396; *United States* v. *Duncan*, 4 McLean, 607, and 12 Ill. 223; *United States* v. *Mechanics' Bank*, Gilpin, 51. A

similar royal prerogative in England " goes back as far as the period of legal memory." *Giles* v. *Grover*, 9 Bing. 128, 192; *Hoke* v. *Henderson*, 3 Dev. (N. C.) 17.

Thus we see that the government may, with the strong hand, not only take land to erect forts and buildings thereon, but to obtain payment of its dues. *Neilson* v. *Lagow*, 12 How. 98–108.

It not only secures lands by right of eminent domain, by conveyance, by levy and sale under execution, but may also, by conquest or by proceedings in confiscation, acquire them without the assent of the State where they lie. *Titus* v. *United States*, 20 Wall. 483; *United States* v. *Huckabee*, 16 id. 434; *Union Insurance Company* v. *United States*, 6 id. 759. Its power to take and hold lands, either by gift, contract, or force, is not derived from, nor can it be defeated by, State legislation.

*Mr. James Flynn, contra.*

1. New York is a sovereign State (4 Cranch, 209; 3 Cow. 686), and the original owner of the land within her limits. N. Y. Const., art. 1, sect. 11. Except in cases where jurisdiction is ceded, she has the sovereign and only right to make laws relating to that land (47 N. Y. 467; 4 McLean, 230; 19 Wall. 676; 17 Johns. 225; 20 How. 558; 5 Pet. 398; 1 Wood. & M. 76–80; 1 Kent, Com. 430); and she has never surrendered the regulation and control of its transmission, by will or devise. 52 N. Y. 534.

The validity of a devise, and the capacity or incapacity to devise, depend upon and are governed by the statutes and judicial decisions of the State within which the land is situate. Story on Conflict of Laws, sects. 465–474; *McCormick* v. *Sullivant*, 10 Wheat. 192; *United States* v. *Crosby*, 7 Cranch, 115; *Kerr* v. *Moon*, 9 Wheat. 565; *Boyce* v. *City of St. Louis*, 29 Barb. 650; *White* v. *Howard*, 46 N. Y. 144; *Levy* v. *Levy*, 33 id. 123, 136, 137; *Aicardi* v. *The State*, 19 Wall. 635.

The statute under consideration regulates the transmission of lands in New York, and in effect declares that they shall be devised only to such natural persons as are by law capable of holding by devise, or to such corporations as the State has expressly authorized, by charter or by statute, to take by devise. *Holmes* v. *Mead*, 52 N. Y. 340. In this case, the only question

was as to the meaning of the statute; and it is well settled that this court will follow the construction given to State statutes by the courts of a State where the title to real property is involved. 13 Wall. 306.

2. The United States cannot take by devise. It exists under and by virtue of a written constitution. It has certain specified powers, and such others as are necessary to carry into effect those expressly granted. All other powers are reserved to the States respectively or to the people. U. S. Const., amend. 10; Story on the Const., sect. 1238; 1 Kent, Com. 251–254. Among its enumerated powers is not that of taking by devise. If it exists, it exists by implication. The experience of a century in peace and war has demonstrated that the government can exist without the power to take by devise, and that the right so to take is not necessary to carry into effect any express power. 1 Kent, Com. 254; Story on the Const., sect. 1239.

But if the power to take may be implied, there is no act of Congress authorizing it. That of May 1, 1820, Rev. Stat., sect. 3736, enacts that " No land shall be purchased on account of the United States, except under a law authorizing such purchase."

3. The United States has no common law. 8-Pet. 658. The appellant assumes, however, that certain common-law prerogatives of the king inhere in the United States, and for that reason are not affected by the statutes of New York.

There is no analogy between the position thus assumed and the principle that " the king is not bound by any act of Parliament, unless he be named therein by special and particular words." This principle only extends to the sovereign by or under whom the law was enacted. 3 Keyes, 125.

New York is sovereign, except where she has surrendered her sovereignty to the United States. The latter is sovereign for specific purposes; each within its proper sphere is independent of the other. 21 How. 506. The United States claims not by virtue of its own laws, but under a will made in professed pursuance of, and depending for its validity upon, the laws of another sovereignty; and it is as much bound by those laws as any foreign state or nation would be, under the same circum-

stances. *Fox* v. *Ohio*, 5 How. 410; *Mayor of New York* v. *Miln*, 11 Pet. 102; *Barker* v. *The People*, 3 Cow. 686.

MR. JUSTICE FIELD, after stating the case, delivered the opinion of the court.

The sole question for our consideration in this case is the validity of a devise to the United States of real estate situated in the State of New York. The question is to be determined by the laws of that State. It is not pretended that the United States may not acquire and hold real property in the State, whenever such property is needed for the use of the government in the execution of any of its powers; as, for instance, when needed for arsenals, fortifications, light-houses, custom-houses, court-houses, barracks, hospitals, or for any other of the many public purposes for which such property is used. And when the property cannot be acquired by voluntary arrangement with its owners, it may be taken against their will by the United States in the exercise of their power of eminent domain, upon making just compensation, — a power which can be exercised in their own courts, and would always be resorted to, if, through caprice of individuals or the hostility of the State legislature, or other cause, harassing conditions were attached to the acquisition of the required property in any other way. *Kohl* v. *United States*, 91 U. S. 367.

The power of the State to regulate the tenure of real property within her limits, and the modes of its acquisition and transfer, and the rules of its descent, and the extent to which a testamentary disposition of it may be exercised by its owners, is undoubted. It is an established principle of law, everywhere recognized, arising from the necessity of the case, that the disposition of immovable property, whether by deed, descent, or any other mode, is exclusively subject to the government within whose jurisdiction the property is situated. *McCormick* v. *Sullivant*, 10 Wheat. 202. The power of the State in this respect follows from her sovereignty within her limits, as to all matters over which jurisdiction has not been expressly or by necessary implication transferred to the Federal government. The title and modes of disposition of real property within the State, whether *inter vivos* or testamentary, are not matters placed

under the control of Federal authority.  Such control would be foreign to the purposes for which the Federal government was created, and would seriously embarrass the landed interests of the State.

Statutes of wills, as is justly observed by the Court of Appeals, are enabling acts, and prior to the statute of 32 Hen. VIII. there was no general power at common law to devise lands.  The power was opposed to the feudal policy of holding lands inalienable without the consent of the lord.  The English Statute of Wills became a part of the law of New York upon the adoption of her Constitution in 1777; and, with some modifications in its language, remains so at this day.  Every person must, therefore, devise his lands in that State within the limitations of the statute or he cannot devise them at all.  His power is bounded by its conditions.  That statute provides that a devise of lands may be made " to any person capable by law of holding real estate; but no devise to a corporation shall be valid unless such corporation be expressly authorized by its charter or by statute to take by devise."

The term " person " as here used applies to natural persons, and also to artificial persons, — bodies politic, deriving their existence and powers from legislation, — but cannot be so extended as to include within its meaning the Federal government.  It would require an express definition to that effect to give it a sense thus extended.  And the term " corporation " in the statute applies only to such corporations as are created under the laws of the State.  It was so held by the Court of Appeals in *White* v. *Howard*, 46 N. Y. 164, 165, and its construction of the statute is conclusive upon us.  A devise to the United States of real property situated in that State is, therefore, void.

*Decree affirmed.*