[No. 8194. In Bank. — August 30, 1886.]

ALAMEDA MACADAMIZING COMPANY, RESPOND-
ENT, v. THOMAS H. WILLIAMS, APPELLANT.

STREET ASSESSMENT — CITY OF OAKLAND — MACADAMIZING PORTIONS OF
STREET. — Under the statutes of 1864 and 1870, authorizing the city
council of the city of Oakland to order the whole or any portion of the
streets of the municipality macadamized, the city council has power
to let the work of macadamizing separate portions of a street in one
contract.

ID. — PROTEST AGAINST PROPOSED WORK — EVIDENCE — FINDINGS — JUDG-
MENT — PRESUMPTION. — The action was brought to foreclose an assess-
ment for the macadamizing of a street in the city of Oakland. An issue
was raised by the pleadings as to whether a majority of the property
owners on the line of the street protested against the proposed work. On
the trial, the court excluded the written protest offered in evidence by
the defendant, but the plaintiff admitted the names of the protestants,
and the number of front feet owned by each on the line of the work.
Findings were waived, and judgment rendered in favor of the plaintiff.
Held, that it would be presumed that a majority of the property owners
on the line of the work did not protest.

ID. — Held, further, that the exclusion of the written protest was without
prejudice to the defendant, as the admission of the plaintiff afforded him
the benefit of the testimony which the protest would have furnished.

ID. — DESCRIPTION OF LAND — SIDE LINE OF STREET AS BOUNDARY. — In such
an action, where the complaint describes the land assessed as bounded
by the side line of the adjoining street, the presumption that the land
extends to the center of the street is rebutted.

ID. — RECORD OF STREET ASSESSMENT — EVIDENCE. — Under section 18 of
the act of April 4, 1864, the records of a street assessment kept by the
marshal of the city of Oakland, and signed by him, have the same force
and effect as other public records, and copies therefrom duly certified are
admissible in evidence with the same effect as the originals.

ID. — DEMAND OF PAYMENT — ASSESSMENT TO UNKNOWN OWNERS. — Under
that act, where the land is assessed to unknown owners, the demand for
the payment of the assessment must be publicly made on the premises; a
demand made to the owner personally, or on the street in front of the
premises, is insufficient.

APPEAL — ERROR IN ADMISSION OF EVIDENCE — EXCEPTION — SPECIFICATION
OF ERROR. — Alleged error in the admission of evidence will not be re-
viewed on appeal, unless the record shows that the evidence was objected
to, and an exception reserved at the trial, notwithstanding the statement
on motion for a new trial specifies the admission of the evidence as one of
the errors on which the party moving would rely.

APPEAL from a judgment of the Superior Court of
Alameda County, and from an order refusing a new trial.

The facts are stated in the opinion.

*Thomas H. Williams, in pro. per.,* for Appellant.

*J. C. Martin,* for Respondent.

SEARLS, C.—This action was brought to foreclose a lien on block 52, East Fourteenth Street, Oakland, based upon a street assessment made by the municipal authorities of the city of Oakland.

Plaintiff had judgment, from which, and from an order denying a new trial, defendant Williams appeals.

The first point made by appellant is, that the council exceeded its jurisdiction in attempting to let the work of macadamizing several separate and distinct portions of Fourteenth Street in one contract.

The jurisdiction of the municipal corporation to improve the street is contained in the statutes of 1863–64, p. 333, and 1869–70, p. 443.

Section 2 of the latter act is in these words: "The city council are hereby authorized and empowered to order the whole or any portion of the streets, lanes, alleys, . . . . macadamized," etc., including the power to grade, construct culverts, curbing, cross-walks, etc.

The resolution of intention to do the work as adopted by the city council September 17, 1877, described the portion of East Fourteenth Street to be macadamized as follows: "From the easterly line of First Avenue to the westerly line of Fifteenth Avenue," except certain portions which are specified, "all of which has already been macadamized to the official grade."

The two acts above referred to confer upon the municipal authorities of the city of Oakland ample authority to open and improve the public streets of that city in all the various modes by which those objects are usually attained, and they might improve "*the whole or any portion* of the streets."

The improvements to be made in this instance were

confined to a single street, and included the whole surface
thereof between certain terminal points, except certain
portions which had already been improved and macad-
amized, and which portions were specifically described.
There is no question but the city council clearly desig-
nated the portions of the street to be improved and the
character of the improvements to be made.

Under such circumstances, we are of opinion the au-
thority of the board was not exceeded by ordering the
portions of the same street not yet improved to be macad-
amized so as to render it uniform with the portions
already improved in that respect.

2. The court did not err in excluding the written pro-
test offered in evidence.

The *proposed work* was the macadamizing *certain por-
tions* of East Fourteenth Street, designating them; the
construction of certain culverts and cross-walks, describ-
ing them and their location, etc.

The protest was "against the macadamizing of said
East Fourteenth Street between the points named" as
terminals, and did not relate to the cross-walks and cul-
verts to be constructed, was not restricted to the portions
to be macadamized, and professed to be made, not by the
owners of property upon the portions of the street to be
improved, but by property owners on the line of East
Fourteenth Street between First and Fifteenth avenues;
*non constat* but that the protestants may have all been
the owners of property upon the portions of the street
already improved and excepted from the work to be
done.

We may, however, waive these objections to the pro-
test as technical, for it appears from the record that the
issue was made by the pleadings as to whether a major-
ity of the property owners on the line of the street did
in fact protest.

At the trial, the names of protestants, and the number
of front feet owned by each on the line of the work, were

admitted, and we must presume in the absence of written findings that the finding on this issue was in favor of the plaintiff, who had judgment; and as the admission of the plaintiff afforded defendant the benefit of the testimony which the protest would have furnished, he cannot complain.

3. Plaintiff introduced in evidence a book labeled "Book F, Street Assessment, Oakland," which defendant admitted was the proper street-assessment book of the city of Oakland, in which the assessment mentioned in the complaint should have been recorded.

Plaintiff's counsel then read therefrom the contract between the city marshal, as street superintendent, and the plaintiff herein, for the performance of the street improvements upon which the. action is based; and secondly, the record of the assessment, dated "Oakland, June 4, 1878," signed by "J. R. Cutting, Marshal City of Oakland," the diagram signed and dated in like manner, and the warrant attached thereto, authorizing and empowering the plaintiff to demand and receive the several assessments upon the assessment and diagram thereto attached, which warrant was of like date and signed by the marshal as in case of the assessment and diagram, and duly countersigned by the mayor.

The record is verified as follows:—

"Recorded June 4, 1878.

"J. R. CUTTING,

"City Marshal of the city of Oakland."

Then follows the contractor's return, showing a demand, and recorded and certified, as in case of the other record, on the 6th of July, 1878.

We do not find in the record of this cause any objection on the part of defendant to the introduction of this testimony.

The statement of the defendant in his specification of errors, upon which he would rely on his motion for a new trial (Transcript, folio 205), to the effect that he

objected to the testimony, and excepted to the decision admitting it in evidence, cannot be received as a properly authenticated exception.

This is but his specification of an alleged error, and which, upon turning to the statement, proves to be without foundation.

We do not understand that the judge who settles and certifies to the correctness of a statement on motion for a new trial thereby gives validity to the statement of fact in the specifications of error. The specification of errors is essential to a statement, but its office under section 659 of the Code of Civil Procedure is to call attention to the precise ground relied upon, and not to fortify the alleged error by a statement of facts in its support.

The specifications may be amended after the time has expired for preparing and settling the statement on motion for a new trial. (*Low* v. *McCallan*, 64 Cal. 2.)

But waiving this question entirely, and we fail to find any error in the action of the court admitting the record of the assessment, diagram, warrant, and return.

Section 18 of the act of April 4, 1864 (Stat. 1863–64), provides that "the records kept by the marshal of said city [Oakland] in conformity with the provisions of this act, and signed by him, shall have the same force and effect as other public records, and copies therefrom duly certified may be used in evidence with the same effect as the originals."

As a public record, the evidence offered, being fair on its face and signed by the marshal, was proper to be admitted in evidence.

So, too, the certificate of record signed by the marshal was sufficient to authenticate it as a record.

The defendant on his part introduced evidence tending to show that on the sixth day of July, 1878, the name of J. R. Cutting was not at the end or bottom of the assessment; that the recollection of the witness (D. H. Whittemore) was that it was not at the end of the dia-

gram, but of that fact the witness was not certain,—that his impression was the warrant was signed and countersigned.

The finding of the court below being in favor of plaintiff, and the court having the record before it, with all the evidence on the subject, we do not feel at liberty to disturb the result for this cause.

4. The several lots of land of the defendant were assessed to unknown owners, and the plaintiff herein, after receiving the assessment, diagram, and warrant, caused payment to be demanded of defendant as follows: 1. By a demand upon the defendant personally; 2. By a demand made upon each and every of the assessed lots by standing on the sidewalk in front of and close to the fence bounding such lots, but not actually upon them (unless such lots extended to the middle of the street), and there making a demand in an audible voice.

The statute of April 4, 1864 (Stats. 1863-64, p. 333), provides that the contractor or his agents or assigns shall call upon the persons assessed, if they can be found, and demand payment; but whenever they cannot be found, "or whenever the name of the owner of the property is stated as 'unknown' in the assessment, then the said contractor, or his agent or assigns, shall publicly demand payment on the premises assessed."

The street seems, from the record, to have been filled in front of the lots of the defendant, so that they, or a part of them at least, were in a hollow, and so far as appears, such lots were unoccupied.

The questions presented are:—

1. Did the lots in question extend to the middle of the street, so that the demand was in fact made by a person standing upon them? and if not, then,—

2. Was the demand so made, contiguous to the premises and capable of being heard thereon, but by a person not actually standing upon the land, a sufficient compliance with the requirements of the statute?

Section 831 of the Civil Code is as follows:—

1. "An owner of land bounded by a road or street is presumed to own to the center of the way, but the contrary may be shown"; and by section 1112 of the same code, it is provided that "a transfer of land bounded by a highway passes the title of the person whose estate is transferred to the soil of the highway in front to the center thereof, unless a different intent appears from the grant."

The conveyance under which defendant holds the property is not before us. The contention of appellant is, that the assessment and diagram show that the line of the lots runs along the margin of the street, *and not into it*.

The assessment describes the property as "fronting upon East Fourteenth Street in said city," etc., and the diagram attached thereto, and to which reference is made, simply shows the lots on each side of the street, and the several cross-streets.

Were these the only sources from which to arrive at a conclusion, we should doubt their sufficiency to overcome the presumption of the code; but turning to the complaint, we find a specific description of defendant's several parcels of land, from which it appears that the margin or line of the street is the boundary of the land.

In *Severy* v. *C. P. R. R. Co.*, 51 Cal. 194, it was held that where a deed described the conveyed premises as running "thence along the easterly line of Sacramento Street 150 feet," and no other language was employed to modify or affect this description, the eastern line, and not the middle of Sacramento Street, was the boundary. (*Maynard* v. *Weeks*, 41 Vt. 617; *Tyler* v. *Hammond*, 11 Pick. 193; *Van O'Linda* v. *Lothrop*, 21 Pick. 295.)

Land described in a deed as bounded by a street will be considered as bounded by the center of the street, unless it clearly appears that it was intended to make the side line of the street as a boundary instead of the center. (*Moody* v. *Palmer*, 50 Cal. 31.)

In the present case, it does clearly appear from the complaint that the side line of the street is the boundary.

To illustrate: in assessment No. 272 the land assessed is described as follows: "Commencing at the point of intersection of the westerly line of Second Avenue with the northerly line of East Fourteenth Street; running thence westerly along said line of East Fourteenth Street 145 feet; thence at right angles 140 feet; thence at right angles easterly 145 feet to the said line of Second Avenue; thence southerly along said line of Second Avenue 140 feet, to the point of commencement."

With such a description, we hold the presumption that the lot runs to the center of East Fourteenth Street and Second Avenue is rebutted.

There are four parcels of land described, all in like terms, and hence the conclusion is the same as to all the parcels.

2. As to the sufficiency of the demand made by a person not actually upon the premises. It is proper to say before discussing this last question that the demand made upon defendant personally was without authority of law.

The statute provides but one mode of making a demand in cases where, as in the present, the property is assessed to "unknown owners," and that is by a demand upon the premises. It matters not that other methods may be as efficacious as the one provided. The lawmakers have prescribed a method, and the courts are not at liberty to adopt a substitute therefor.

This preliminary question disposed of, it only remains to determine the legality of the demand upon the premises made as hereinbefore stated.

The language of the statute is as follows: "Whenever the name of the owner of the lot is stated as 'unknown' in the assessment, then the said contractor, or his agent or assigns, shall publicly demand payment on the premises assessed."

The contention of the respondent is, that if the person making the demand is in such close proximity to the premises that his voice can be heard thereon, all the objects of a demand are attained, and that a physical, corporeal contact with the premises by the person making the demand can add nothing to its efficiency; and such seems to have been the view of the court below.

So far as the present case is concerned, at least, this view seems plausible. We must, however, give to this provision of the statute an interpretation alike applicable to all cases arising under it. If the demand may be legally made by one not actually upon the premises, then how far from such premises may he remain, and the demand still be held good? If it be answered that it may be made at any distance provided the voice can be distinctly heard upon the premises, the response must be that the effect of this rule will tend to substitute the opinion of the person making the demand as to whether he could be heard for an essential fact in the case, and will tend to open a door for fraud. Premises of this character in a city will usually have an occupant, or some person in charge, to whom the presence of a person upon them in the attitude of an apparent trespasser will in itself many times attract attention and cause the demand to be heard.

Many reasons more or less cogent might be urged why the law-makers required a demand to be made upon the premises to be charged, but it is sufficient to say that the statute so requires, and that in our opinion by the term "on the premises" the law-makers meant "by a person on the premises."

This provision seems to have been taken from the rule of the common law in relation to the demand of rent before entry or ejectment, where, in order to claim a forfeiture, it was held that, in the absence of an agreement to the contrary, a demand must be made "upon the land, and at the most notorious place of it"; and

such demand, it is said, must be made although there be no person present to answer; and as the tenant had the whole day upon which the rent fell due to make payment, the landlord or his agent, to complete the forfeiture, must not "only make the demand at the proper time and place, but must *remain upon the land* and continue the demand actually or constructively until after sunset." (Wood's Landlord and Tenant, sec. 452.)

And it was even held that a personal demand made off the land was not sufficient to work a forfeiture of a lease.

The land was regarded as the debtor, and to create a forfeiture for non-payment of rent, the demand must be made upon it. So in the present case the land is charged with the payment of the assessment, and where the owner is designated as "unknown," the statute is imperative in requiring the demand to be made *publicly on the premises;* and a demand made near to, in the neighborhood of, or within hearing of the premises does not satisfy the requirements of the statute.

It follows that the demand as made was insufficient, and the judgment of the court below and the order denying a new trial should be reversed and a new trial had.

BELCHER, C. C., and FOOTE, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment and order are reversed and cause remanded for a new trial.