[S. F. No. 6873. In Bank.—December 7, 1917.]

MARIE E. E. BERTON, Appellant, v. ALL PERSONS, etc., Defendants; CITY AND COUNTY OF SAN FRANCISCO et al., Respondents.

PUBLIC HIGHWAY—DEDICATION BY LAND OWNER—SALE OF LOTS BY REFERENCE TO MAP.—Where the owner of land divides it into lots and sells the lots by descriptions running along the line of a street delineated on a recorded map, which is referred to in the various conveyances, he thereby offers a dedication of the street which is accepted by use on the part of the public.

ID.—OWNERSHIP OF THE FEE.—Where the original owner, in such case, conveys the lots by descriptions running to and along the lines of the street, he retains in himself the fee of the street subject to the easement.

ID.—CONVEYANCE OF FEE OF THE STREET — RIGHTS OF PURCHASER.—Where the owner of land subdivides it into lots and lays out and dedicates a public street through it, and thereafter sells the lots by descriptions which run only to and along the lines of the street, thus retaining the fee of the street in himself, and thereafter conveys his fee to the respective lot owners, in proportion to their ownership of the lots fronting on the street, the effect of such conveyance is simply to give to each lot owner such portion of the street as fronts his lot, subject to the easement of the public highway.

TITLE TO LAND — MCENERNEY ACT — JUDGMENT IN REM — EFFECT OF JUDGMENT ON RIGHTS OF THE STATE OR STATE AGENCY.—Although a judgment establishing title under the McEnerney Act is conclusive against all the rights of private persons, individuals, associations, and corporations, whether named in the judgment or unnamed, nevertheless in the case of rights and claims of the state and

claims held by public agencies and public mandatories for the sake of the public, as in the matter of highways, parks, wharves, and the like, unless the state or such agencies can be, and have been, so brought in by appropriate pleadings that such conflicting rights may be heard and determined, and unless those rights have been so heard and determined, the judgment *in rem* rendered will not be held to include them nor the trustee or agency charged with the duty of maintaining and upholding them.

ID.—JUDGMENT UNDER McENERNEY ACT—EVIDENCE.—In an action by a lot owner to establish title under the McEnerney Act to land, over which private individuals, owners of adjoining lands, claimed an easement, and in which action the city and county of San Francisco appeared and by answer asserted its rights in the property as a public highway of the city, the judgment-roll of a final judgment in a previous action by the same plaintiff under the same act, in which the municipal corporation had not been mentioned as claiming any interest and in which it had not appeared or made any claim, was, as between the private litigants, admissible as a determination, by the estoppel of a judgment, of their private rights *pro* and *con* over the private rights of way, but, as against the municipal corporation, contending for the existence of a public highway, the judgment was without force, and was properly refused admission in evidence.

ID.—McENERNEY ACT—APPLICABILITY OF ACT TO THE STATE.—The McEnerney Act deals only with the private rights of private persons, associations, and corporations other than public agencies acting in their public capacity, and the state is not bound by decrees under the act.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.  B. V. Sargent, Judge.

The facts are stated in the opinion of the court.

Harding & Monroe, J. R. Pringle, and Robert H. Borland, for Appellant.

Percy V. Long, N. J. Manson, Dorn & Dorn & Savage, and Theodore J. Savage, for Respondent.

Burrell G. White, Stoney, Rouleau, Stoney & Palmer, and Garret W. McEnerney, *Amici Curiae.*

THE COURT.—The above-entitled cause was heard in Department and the following opinion and decision handed down:

"The action was to quiet title. The appeal is from the judgment given in favor of defendants and against plaintiff.

"The common source of title was in Edward Franklin. He plotted his land, dividing it into numbered lots as shown by the accompanying diagram.

"Frank Place is thus shown as a *cul de sac,* extending to and abutting on the land of Hamilton, which land Franklin did not own. In 1853 Franklin began the sale of these lots. The first was of a lot described by metes and bounds, and further described as 'subdivision No. 4 of said fifty vara lot No. 596 . . . as per plan annexed.' Annexed to this deed and recorded with it was the diagram, plot, or plan as herein delineated, saving that the Hamilton lot was not thereon indicated. Thereafter Franklin conveyed all of the other lots to various grantees, in each case describing the portion conveyed by the lot number. The first of these deeds made reference to Frank Place as 'a private alley-way.' In no other deed was there any such designation. By successive conveyances Franklin divested himself in terms of title to all of the fourteen lots. Thereafter, in 1864, he made a deed to Lacy in which, declaring himself to have been the owner of this fifty vara lot No. 596, and reciting that he had at various times sold to divers persons subdivisions of this vara lot fronting on a street or place called 'Franklin Place,' he remised

and released unto Lacy and other owners and holders of portions and subdivisions of vara lot No. 596, fronting on Frank Place, all his right and title to Frank Place 'to be used and kept open as a public street and highway and for no other use whatever.' Frank Place was continuously kept open and used as a public street until plaintiff acquired title to lots 9, 10, 11, and 12, when she proceeded to inclose that portion of Frank Place fronting her lots by bulkheading across Frank Place along the extension of the easterly line of her lots 9 and 12. She followed these obstructions with this action. The defendants are the city and county of San Francisco, insisting that the land in controversy is one of its public streets; the defendant Hamilton urging the same contention, and being especially interested by reason of the location of her own lot; and the Anglo-American Securities Company owning a lot fronting on Frank Place and immediately adjacent upon the east to plaintiff's land.

"Appellant's first and most serious contention is over the introduction in evidence against her objection of the deed by Franklin to Lacy. The injury caused to appellant's case by the introduction of this deed, if Franklin at the time he made it had no title in Frank Place which he could thus dedicate, is of course apparent. Appellant's contention is that he had no such title. Her argument in this behalf is based upon the language of section 831 of the Civil Code, to the effect that 'an owner of land bounded by a road or street is presumed to own to the center of the way, but the contrary may be shown,' and section 1112 of the Civil Code, to the effect that 'a transfer of land, bounded by a highway, passes the title of the person whose estate is transferred to the soil of the highway in front of the center thereof, unless a different intent appears from the grant.' The only California case which appellant cites is *Masterson* v. *Munro,* 105 Cal. 431, [45 Am. St. Rep. 57, 38 Pac. 1106], which simply announces the indisputable proposition that where the description in the deed to the grantee is of a numbered lot of land according to the official map of the city, and the deed contains a further description by metes and bounds, courses, and distances, which latter description is in conflict with the measurements and dimensions of the lot number, the latter will control. The argument, supported by citations of authority from courts other than our own, is then advanced that, treating these de-

scriptions as merely descriptions by lot number, the presumption will arise, in accordance with the sections of the code above quoted that the conveyance was made of each lot by lot number and carried title to the middle of Frank Place. Appellant is driven to invoke this rule of construction because the facts are that in each of the deeds which Franklin made he carried out a description by metes and bounds, and the side lines of Frank Place are in each instance given as a boundary. Thus, 'to the northerly line of Frank Place and easterly along said line.' The decisions of our court are to the effect that while the presumption declared by the codes will in all proper cases be given effect, it is one which in many ways may be rebutted, and one of the specific ways in which it is declared that it is rebutted is by a description precisely such as the grantor Franklin made in these deeds. Thus, where the description read 'thence along the eastern line of Sacramento Street 150 feet,' this court declared, 'It is very clear, therefore, that the parties to the instrument intended that the lot should run up to the eastern line and not to the middle of the street.' (*Severy* v. *Central Pac. R. R. Co.*, 51 Cal. 194. See, also, *Alameda Macadamizing Co.* v. *Williams*, 70 Cal. 534, [12 Pac. 530].)

"Moreover, a reliance by appellant upon these code sections must necessarily result in a surrender of her case, for the presumption which extends title to the middle of a street or highway necessarily presupposes the existence of such street or highway, and if such street or highway therefore was dedicated and does exist, plaintiff has absolutely no right to obstruct it, and since the whole controversy is over her right to obstruct it, we are justified in assuming that a decree of a court that she owns the naked fee, subject to the easement of a highway, or even of a private way, would be of little value. For whether considered as a public highway or a private way, the rights of all the abutting property owners are so well defined as to forbid the thought that their use of this way could be interfered with. (*Williams* v. *Los Angeles Ry. Co.*, 150 Cal. 594, [89 Pac. 330]; *Petitpierre* v. *Maguire*, 155 Cal. 242, [100 Pac. 690].)

"So far as we have proceeded with this discussion it has remained a matter of indifference whether Frank Place was in law a public street or a private way. But no doubt can be entertained that it is a public highway of the city and county

of San Francisco, and this for the following reasons: but one of the deeds—and that the first one—made by Franklin spoke of Frank Place as a private way. The others are silent. He recorded a map showing this street, and sold his lots by descriptions running along the lines of this street. Under these sales, for the reasons above given, he still retained in himself the fee of Frank Place, subject to the easement. His recording of this plat and the selling of his lands by specific reference to it, accomplished a complete dedication or offer of dedication which was accepted by use of the public. (*Stone* v. *Brooks*, 35 Cal. 489; *Archer* v. *Salinas*, 93 Cal. 43, [16 L. R. A. 145, 28 Pac. 839]; *San Leandro* v. *Le Breton*, 72 Cal. 170, [13 Pac. 405]; *Smith* v. *City of San Luis Obispo*, 95 Cal. 463, [30 Pac. 591]; *Los Angeles* v. *McCollum*, 156 Cal. 148, [23 L. R. A. (N. S.) 378, 103 Pac. 914]; 3 Dillon on Municipal Corporations, 5th ed., sec. 1079.) Up to this point, then, we have the case of a public highway with a fee to the soil, subject to the public use, in Franklin. Thereafter he conveyed his fee to the respective lot owners in proportion to their ownership of the lots fronting on Frank Place, the effect of which was simply to give this plaintiff title to such portion of Frank Place as fronts her lots, subject to the easement of the public highway. Such being the unquestioned condition of the titles, it was not error for the court to admit the deed in controversy, and all other asserted errors growing out of the introduction of ordinances and maps and judgment-rolls require no consideration.''

In appellant's petition for hearing before the court in Bank which followed, the very just complaint was made that the Department had omitted to discuss and to pass upon the asserted error of the trial court in refusing to admit in evidence a judgment-roll in an action previously brought by the plaintiff under the McEnerney Act, by the judgment in which action, which had become final, the title of appellant to the land in dispute had been quieted against all the world. Upon this showing a hearing before the court in Bank was ordered primarily for a consideration of this ruling of the trial court in refusing to admit this judgment-roll in evidence.

The McEnerney Act is drafted as its very title imports for the twofold purpose, first, of restoring records of title destroyed by public disaster as in the fire succeeding the earthquake of April, 1906, in San Francisco, and, second, to quiet

the title of the plaintiff or petitioner after such restoration. It is an action *in rem.* (*Title etc. R. Co.* v. *Kerrigan,* 150 Cal. 289, [119 Am. St. Rep. 199, 8 L. R. A. (N. S.) 682, 88 Pac. 356]; *Hoffman* v. *Superior Court,* 151 Cal. 386, [90 Pac. 939].) An inspection of the judgment-roll offered in evidence discloses, first, that the city and county of San Francisco was not named therein as one of the persons, parties, or corporations claiming an interest in the property, and that, therefore, there was nothing in the action to bring directly to the attention of the authorities of the city and county of San Francisco the fact that the city's rights were or might be involved. Second, it is made to appear from the evidence taken by the court upon the question of the right to introduce this judgment-roll that the city and county of San Francisco did not appear in that action: "The Court: The city and county made no claim? Mr. Pringle: No, your Honor." Third, that in plaintiff's affidavit declaring the names of the persons whom affiant knew or believed to claim an interest in the property no mention is made of the city and county of San Francisco. In the present action the city and county of San Francisco did appear by answer asserting its rights in the disputed property as a public highway of the city.

It is apparent, therefore, that the binding and conclusive force of the earlier judgment as against the city and county of San Francisco must come, if it exists at all, from the fact that a judgment under the McEnerney Act, valid on its face, is a judgment *in rem* and so "binding on the whole world," unless and until set aside under familiar equitable principles.

That the judgment here offered is valid upon its face cannot be disputed. As little may it be questioned but that such a judgment is conclusive upon all private rights and so is conclusive against all the rights of private persons, individuals, associations, and corporations whether in the judgment named or unnamed. Thus beyond question this previous judgment was binding upon all the private litigants in the present action.

It is to be considered, however, what may be its binding force and effect upon the state itself and upon the state's public agencies and mandatories such as for some purposes municipal corporations always are. In brief, our inquiry is, What was the effect of this previous judgment upon the city and county of San Francisco present and objecting to its

introduction as an estoppel against its own claim? Law is a rule of conduct dictated by the superior, the state, for the conduct and control of its people. It is only by its own grace that the state ever becomes subject to the operation of its own laws, and while in later governmental development the state frequently makes declaration that it will submit its own rights to determination in its own or other courts, yet, as such declarations are always in the nature of impairments of the sovereign power, this submission of the state is never inferred in favor of the private litigant, but must be found either actually expressed in an act or by fair intendment and interpretation to belong in the act. It is unnecessary to cite illustrations of this. They are too familiar. Suffice it to refer to the fact that title by adverse possession as against the state can only be secured under such permissive law. The mechanic's lien law of universality in its operation does not apply to the land and buildings of the state.

A reading of the McEnerney Act discloses not only a failure by the state to declare itself bound by decrees so obtained, but makes manifest that the statute was dealing only with the private rights of private persons. Giving to "persons" its broad and indubitable meaning, the statute was dealing with the private rights of individuals, associations, copartnerships, and corporations other than public agencies acting in their public capacity. A sovereign state is not a person.

Certain consideration briefly stated must serve to confirm this view. Sections 749, 750, and 751 of the Code of Civil Procedure were the law of this state before the adoption of the McEnerney Act. A reference to the language of these sections and to the language of the McEnerney Act will disclose that in some respects the latter act carefully followed the language of the earlier sections of the code dealing, as does the McEnerney Act, with the determination of adverse claims to real property and to the quieting of title. In section 751 it is declared that a judgment so obtained against persons known and unknown "shall have the effect of a judgment *in rem* except as against the state of California and the United States." The McEnerney Act was passed to enable private owners to clear up the multitudinous questions that inevitably arose by the destruction of the records of their titles, for in this state the utmost dependence in all land

transactions had come to be placed upon such records. In its essence it is a private statute taking on its unquestioned public character from the very multitude of private interests which were involved. Nothing in the language of the statute even conduces to the belief that it was designed that claims held by public agencies and public mandatories for the sake of the public, as in the matter of highways, parks, wharves, and the like, would ever be determined in such an action, at least, without notice to the agencies charged with the duty of protecting the public rights. In this sense the city and county of San Francisco is a representative of the state. The state's exclusion from the scope of such judgments is the exclusion of the city and county of San Francisco. We do not mean here to be understood as saying, for we do not decide that such an agency may not be brought in by appropriate pleading and that so brought in the conflicting rights may not be heard and determined. What we do hold is this, that unless those rights have been so heard and determined, the judgment *in rem* rendered will not be held to include them nor the trustee or agency charged with the duty of maintaining and upholding them.

We think this to be a perfectly sound enunciation of the underlying legal and equitable principles involved, but, in addition, the argument of inconvenience has its force. It would open the door, upon the one hand, to great frauds, upon the other hand, to great labor and expense upon the part of municipalities, if, under circumstances such as here presented, such a decree could deprive without the slightest notice to the municipality, and without anything other than the constructive notice to put it on its guard, a city of its public park, of a portion of its streets, or of a section of its waterfront; while to avoid this, if such were the law, would entail the onerous labor and expense of an examination of every pleading in every action brought under this act.

It is concluded, therefore, that while as between these private litigants the judgment-roll was admissible as a determination by the estoppel of a judgment of their private rights *pro* and *con* over the private rights of way, that as against the city and county of San Francisco contending for the existence of a public highway the judgment was without force and was properly refused admission in evidence, and as this conclusion, for the reasons given in the Department

opinion above set forth, is determinative of the question here in controversy against the contention of appellant, and as the other propositions advanced for reconsideration before the court in Bank have been adequately and satisfactorily treated in the Department opinion, the judgment appealed from is affirmed.

Rehearing denied.