[Sac. No. 5963. In Bank. Feb. 7, 1950.]

THE PEOPLE, Appellant, v. CENTR-O-MART (a Corporation) et al., Respondents.

Fred N. Howser, Attorney General, and Clarence A. Linn, Deputy Attorney General, for Appellant.

Forrest E. Macomber for Respondents.

CARTER, J.—The District Attorney of San Joaquin County began this civil action in the name of "The People of the State of California" against the Centr-O-Mart, a corporation, and certain individual defendants, to enjoin alleged violations of the Unfair Practices Act (Bus. & Prof. Code, §§ 17000-17101.) The defendants interposed a demurrer and motion to dismiss the complaint upon the ground that the state was not a proper party plaintiff. The trial court made an order sustaining the demurrer without leave to amend and a judgment of dismissal of the action was thereupon entered.

The only question presented here for determination is whether the state is a proper party plaintiff to maintain a civil action to restrain alleged violations of the Unfair Practices Act.

The precise question involved has not heretofore been decided by this court. In *People* v. *Black's Food Store,* 16 Cal.2d 59 [105 P.2d 361] and the companion case of *People* v. *Green Frog Food Emporium,* and *People* v. *Pay Less Drug Store,* 25 Cal.2d 108 [153 P.2d 9], the state successfully maintained actions to enjoin violations of the act but no objection was there made to the state as a party plaintiff.

Section 17070 of the act provides that "Any person or trade association may bring an action to enjoin and restrain any violation of this chapter and, in addition thereto, for the recovery of damages." Section 17100 makes any violation of the provisions of the act a misdemeanor. The word "person" is defined by section 17021 as "any person, firm, association, organization, partnership, business trust, company, corporation or municipal or other public corporation." Section 17020 provides that "The definitions in this article shall be used in construing this chapter."

The question here presented for determination is whether the state, because not expressly included within the list of those who may bring actions to enjoin alleged violations, is excluded by implication. It would appear that this question must be answered in the negative.

The universal rule is that "laws in derogation of sovereignty are construed strictly in favor of the state and are not permitted to divest it or its government of any prerogatives, unless intention to effect that object is clearly expressed." (23 Cal.Jur. § 4, p. 526, and cases there cited; *C. J. Kubach Co.* v. *McGuire,* 199 Cal. 215 [248 P. 676].)

A statute will not be construed to impair or limit the

sovereign power of the state to act in its governmental capacity and perform its governmental functions in behalf of the public in general, unless such intent clearly appears. (*People* v. *California Fish Co.*, 166 Cal. 576, 592 [138 P. 79].)

Section 17001 of the act provides that "The Legislature declares that the purpose of this chapter is to *safeguard the public* against the creation or perpetuation of monopolies and to foster and encourage competition, by prohibiting unfair, dishonest, deceptive, destructive, fraudulent and discriminatory practices by which fair and honest competition is destroyed or prevented." [Emphasis added.] Section 17002 provides that "This chapter shall be liberally construed that its beneficial purposes may be subserved."

■ Where a statute is not expressly made applicable to government, it is for the courts to determine whether the Legislature intended it to apply to government. In making that determination, it is proper to consider all matters which, under the rule of statutory interpretation, shed light on the legislative intention. (*Nutter* v. *Santa Monica*, 74 Cal.App. 2d 292 [168 P.2d 741].) ■ Words of a statute must be given such interpretation as will promote rather than defeat the general purpose and policy of the law. (*Dept. of Motor Vehicles* v. *Industrial Acc. Com.*, 14 Cal.2d 189 [93 P.2d 131].)

■ The Legislature here has specifically declared that the purpose of the act is to "safeguard the public." It would appear that the state, acting through its law enforcement officers, is a proper party plaintiff to bring suit for that purpose, and that the Legislature did not intend to exclude it by implication.

In the case of *Pierce* v. *Superior Court*, 1 Cal.2d 759 [37 P.2d 453, 460], it was held that the attorney general, as the chief law officer of the state, has broad powers derived from the common law, and in the absence of any legislative restriction, has the power to file any civil action or proceeding directly involving the rights and interest of the state, or which he deems necessary for the enforcement of the law of the state, the preservation of order, and the protection of public rights and interests. It was there held, at pages 761 and 762, that Political Code, section 1109, was not "to be construed as a restriction upon the broad powers of the attorney-general. The fact that a remedy is given to a private individual to institute such an action could not operate to deny the power of the attorney-general to bring a similar action on behalf of the state, which power exists independent of said section."

In *State of California* v. *Marin Municipal Water Dist.*, 17 Cal.2d 699, 704 [111 P.2d 651], it was held that the word "person" embraced a municipal water district, and that the general words in a statute would not be construed to limit the otherwise valid power of the state or its subdivisions unless that result was specifically intended by the Legislature.

In accord with the universal rule, and the foregoing authorities, we are of the opinion that there is nothing in the Unfair Practices Act to lead to the conclusion that the Legislature intended to exclude the state, acting through its duly elected officers, from enforcing its provisions in the interest of the public welfare.

The judgment is reversed.

Gibson, C. J., Shenk, J., Traynor, J., and Spence, J., concurred.

EDMONDS, J.—I find nothing in the Unfair Practices Act which allows the state to maintain a civil action for the purpose of restraining a violation of its provisions. Certainly the broad powers mentioned in *Pierce* v. *Superior Court,* 1 Cal. 2d 759, 761-762 [37 P.2d 453, 460], are not a substitute for statutory authority to enjoin the asserted unfair practice of an individual in his dealings with another person.

Section 17070 of the Business and Professions Code reads: "Any person or trade association may bring an action to enjoin and restrain any violation of this chapter and, in addition thereto, for the recovery of damages." By other sections of the same code, the Legislature declared that, for the purpose of construing the statute which is the basis of this action, the word "person" shall mean "any person, firm, association, organization, partnership, business trust, company, corporation or municipal or other public corporation." (§§ 17020, 17021.) The basis of the present decision is that the Legislature intended the state to be included within the meaning of the word "person," although the statute does not express such a purpose.

It has been the uniform view of the courts of California that the word "person" does not include the state. In the case of *Berton* v. *All Persons,* 176 Cal. 610, 617 [170 P. 151], this court said: "A sovereign state is not a person." The same conclusion was more recently stated in *Bayshore Sanitary Dist.* v. *San Mateo County,* 48 Cal.App.2d 337 [119 P.2d 752]. In common usage, the term "person" does not include the

sovereign, and therefore a statute using that term ordinarily is construed to exclude it. (*United States* v. *Cooper Corp.*, 312 U.S. 600, 604 [61 S.Ct. 742, 85 L.Ed. 1071].) The Court of Appeals of New York, in a case in which the definition of the word was of vital importance, held that the word "person" does not, in its ordinary or legal definition, include either a state or a nation. (*In re Fox*, 52 N.Y. 530 [11 Am. Rep. 751]; affirmed *United States* v. *Fox*, 94 U.S. 315 [24 L.Ed. 192].) Upon this reasoning the Supreme Court of the United States decided that the United States cannot maintain a civil action for treble damages under the Sherman Anti-Trust Act, stating: " . . . the use of the phrase 'any person' is insufficient to authorize an action by the Government. This conclusion is supported by the fact that if the purpose was to include the United States, 'the ordinary dignities of speech would have led' to its mention by name." (*United States* v. *Cooper Corp.*, *supra*, at p. 606; quoting with approval from *Davis* v. *Pringle*, 268 U.S. 315, 318 [45 S.Ct. 549, 69 L.Ed. 974].)

There is nothing in the Unfair Practices Act which would indicate that the Legislature intended to enlarge upon the ordinary or legal definition of the term "person." The contrary intention is evident. Article 4 of the act deals with the civil liability flowing from its violation. The state is not included among the parties who may bring such an action. By Article 6, a violation of the act is made a misdemeanor as well as a civil wrong (Bus. & Prof. Code, § 17100) and there the Legislature has specified the manner in which the state, through the attorney general, shall aid in the enforcement of the law. Had the intention of the Legislature been to give the state a civil remedy, the statute would have expressly provided for it, as was done in the case of false advertising (Bus. & Prof. Code, §§ 17500-17702; see especially section 17535 wherein the Legislature has stated in detail the manner in which an action by the state for an injunction may be initiated.)

These same factors were relied upon by the United States Supreme Court in interpreting the Sherman Anti-Trust Act. It was stated that when Congress defined the word "person" to " 'include corporations and associations existing under or authorized by the laws of either the United States, the laws of any of the Territories, the laws of any state, or the laws of any foreign country,' " the purpose was "to preclude any narrow interpretation . . ." This definition, said the court,

only serves to emphasize "the fact that if the United States was intended to be included Congress would have so provided expressly." (*United States* v. *Cooper Corp., supra,* at p. 607.)

The California Unfair Practices Act, like the Sherman Anti-Trust Act, authorizes two classes of action. In construing the federal statute, the dual procedure was a factor considered and relied upon by the court in reaching its decision. "The scheme and structure of the legislation," it was said, "are likewise important to a proper ascertainment of its purpose and intent . . . It seems evident that the Act envisaged two classes of action,—those made available only to the Government, which are first provided in detail, and, in addition, a right of action for treble damages granted to redress private injury. If this be the fair construction of the Act, the Court's task is finished when it gives effect to the purposes of the law, evidenced by the various remedies it affords for different situations. Though the law gave a remedy by way of injunction at the suit of the United States, we were pressed to say that a private person should have the same remedy. We were compelled to answer that Congress had not seen fit so to provide [*Minnesota* v. *Northern Securities Co.,* 194 U.S. 48, 71 (24 S.Ct. 598, 48 L.Ed. 870) ; *Paine Lumber Co.* v. *Neal,* 244 U.S. 459 (37 S.Ct. 718, 61 L.Ed. 1256)]. For the like reasons we cannot hold that since a private purchaser is given a remedy for his losses in treble damages, the United States should be awarded the same remedy." (*United States* v. *Cooper Corp., supra,* at p. 608.)

The same reasoning requires the conclusion that the omission of the state from the list of those who may maintain the civil action was an intentional restriction. Otherwise stated, the intention not to include the state as a party who may sue to enjoin a violation of the act clearly appears and under such circumstances the rule stated in *People* v. *California Fish Co.,* 166 Cal. 576, 592 [138 P. 79], has no application.

For these reasons I would affirm the judgment.

SCHAUER, J., Dissenting.—I concur in the views expressed by Mr. Justice Edmonds. It may also be observed that the majority opinion does not mention, but proceeds inconsistently with, the long established rule that "When language which is reasonably susceptible of two constructions is used in a penal law ordinarily that construction which is more favorable to the offender will be adopted. In other words, criminal statutes will not be built up 'by judicial grafting upon legis-

lation . . . [I]t is also true that the defendant is entitled to the benefit of every reasonable doubt, whether it arise out of a question of fact, or as to the true interpretation of words or the construction of language used in a statute.' '' (*People* v. *Ralph* (1944), 24 Cal.2d 575, 581 [150 P.2d 401] ; see, also, *People* v. *Valentine* (1946), 28 Cal.2d 121, 143 [169 P.2d 1] ; *Ex parte Rosenheim* (1890), 83 Cal. 388, 391 [23 P. 372] ; *People* v. *Sayre* (1937), 26 Cal.App.2d Supp. 757, 761 [70 P.2d 546].)

The trial court reached its judgment by following well established law; that judgment should be affirmed.

Respondents' petition for a rehearing was denied March 6, 1950. Edmonds, J., and Schauer, J., voted for a rehearing.