[Civ. No. 23234. Second Dist., Div. One. Nov. 18, 1958.]

Estate of LOUIS CAVNER, Deceased. ROBERT C. KIRK-WOOD, as State Controller, etc., Appellant, v. THE AMERICAN FRIENDS OF THE HEBREW UNIVERSITY (a Corporation), Respondent.

James W. Hickey, Chief Inheritance Tax Attorney, and Walter H. Miller, Chief Assistant Inheritance Tax Attorney, and William L. Baugh, for Appellant.

Albert H. Allen, Michael J. Fasman and Leonard S. Wolf for Respondent.

FOURT, J.—This is an appeal from an order determining, in effect, that a devise made by the decedent went to a tax exempt New York corporation instead of to a university in Israel which did not qualify for exemption from estate and inheritance taxes.

Louis Cavner, a resident of Los Angeles County, California, made a will April 1, 1953, wherein, after specifying certain gifts, he devised a one-fourth of the residue of his estate "to the Hebrew University in Israel, with the request that it be used for the purpose of combating cancer, and that a suitable memorial for Louis Cavner and Bella Cavner be established by the University."

The testator died May 17, 1956, and his will was admitted to probate. An inheritance tax appraiser was appointed by the court and in due time he appraised the estate and filed his tax report dated September 17, 1957. The report showed that the appraiser valued the interest of the "Hebrew University of Israel" at $74,954.11, and reported a tax due thereon of $7,240.99. A notice of filing the report of the appraiser was filed on December 5, 1957. This notice set forth, among other things, in effect, that all persons interested in the estate could appear and file objections to such report within 10 days and that if no objections were filed an order confirming the report and fixing the tax in accordance therewith could be signed.

On December 9, 1957, the attorneys who presently appear for the petitioner filed "Objections to Inheritance Tax Report" for the Hebrew University in Israel. In this document it is set forth that Hebrew University is a legatee and devisee under the will; that the report is erroneous and incorrect in that the "Hebrew University of Israel" is improperly charged with the tax in the sum of $7,240.99, because the University was organized solely for charitable, educational, etc. work, and as such was exempt from inheritance tax. One of counsel verified the document as the attorney for the Hebrew University of Israel. The issues raised in that report and the objec-

tions thereto apparently have not as yet been tried and determined.

On January 24, 1958, there was filed a "Statement of Claim of Interest in the Estate and Petition for Determination" by the "American Friends of the Hebrew University," a New York corporation. This document set forth, generally, that Louis Cavner died; that he had devised one-quarter of the residue of his estate, amounting to about $75,000 to "Hebrew University in Israel;" that there is no entity of such name; that there does exist an entity by the name of "The Hebrew University Association" which is a nonprofit entity organized to run a university near the city of Jerusalem; that the only agency of said Hebrew University Association within the United States is the American Friends of the Hebrew University, the New York corporation. Further it is set forth that the testator, in devising one-quarter of the residue of his estate, intended that the said money be devised to the agency of the Hebrew University in the United States which qualified as an entity exempt from estate and inheritance taxes; further, that on the date of death of the decedent a bequest directly to the Hebrew University Association would not be exempt from California state inheritance taxes by reason of the fact that at such time the state of Israel did not have a reciprocal provision, which under California law is necessary before a charity in a foreign jurisdiction can qualify as a tax exempt entity; that the decedent did not intend to devise one-quarter of the residue of his estate to the Hebrew University Association in that such a devise would be subject to inheritance taxes. It was also set forth that all proceeds donated to the New York corporation are transmitted to the Hebrew University Association for use in connection with the University; that if the petition be granted, and the money distributed to the New York corporation, the proceeds would then be sent by the New York corporation to the Hebrew University Association free and clear of any California State inheritance tax.

There was testimony at the hearing that there is a university in Jerusalem called the Hebrew University, and as such it had been in existence for 30 years. The attorney who prepared the will also testified, among other things, that he drafted the provision in question; that the deceased had raised the question as to the amount of inheritance taxes which would become due on the bequests to the organizations named in the will (namely $1,000 to the Community Chest of Los

Angeles; $1,000 to the American Red Cross; $2,000 to Mt. Sinai Hospital and Clinic of Los Angeles; $5,000 to the City of Hope; $5,000 to the Los Angeles Chapter of Hadassah [to be utilized for good purposes in Israel], and the residuary provisions of one-quarter to the American Heart Association, one-fourth to the American Cancer Society, one-fourth to Cedars of Lebanon Hospital and the one-quarter with which this appeal is concerned.) The witness stated, "I told him in my opinion there would be no inheritance tax." The witness further stated that he was not familiar with an entity known as the American Friends of the Hebrew University, a New York corporation, and did not know that the name of the agency of the university in Israel was the New York corporation. He also testified that the testator knew that there was a Hebrew University in Israel, and that likewise he, the attorney, knew that there was such a university. He testified too, in effect, that he was not exactly sure of the name of the university, however, he did not at the time think that this was material because the money would ultimately reach the beneficiary so intended. There was testimony that the terms Hebrew University, Hebrew University in Israel and American Friends of the Hebrew University are synonymous in the minds of the American public; that in public addresses the New York corporation was referred to as the Hebrew University and that many checks which were received were made out to "Hebrew University" and were then banked by the respondent; that the New York corporation was the sole agency in the United States which solicits and collects funds for the benefit of the University in Israel and that it has no other function or purpose, and that all funds so collected are transmitted to the University. There was other testimony introduced to which it is not necessary to refer in this opinion.

The trial court made the following findings:

"V

"That the Hebrew University Association has an agency in the United States known as 'The American Friends of the Hebrew University, Inc.' which is a non-profit corporation organized and existing under the laws of the State of New York and whose sole function is to raise and collect funds within the United States for the use and benefit of The Hebrew University Association in Israel. That the American Friends of the Hebrew University, Inc., maintains offices throughout the United States for the purpose of soliciting and

collecting funds for the Hebrew University Association; that *it's* sole activity is the solicitation and raising of funds in the United States for the benefit of The Hebrew University Association and that it transmits all of the funds which it collects directly to The Hebrew University Association for use by said association for the operation of its university and for the equipment and maintenance thereof and the promotion of learning. That said corporation does not engage in any other activity whatever.''

"VI

"That The American Friends of the Hebrew University, Inc., is synonomous in the minds of the general public with The University in Israel and that 'The American Friends of the Hebrew University, Inc.,' is generally known and referred to by the public as 'The Hebrew University,' That the American Friends of the Hebrew University, Inc., in the solicitation of funds and making itself known to the public generally refers to itself as 'The Hebrew University' and that in disseminating information concerning the University, representatives of 'The American Friends of the Hebrew University, Inc.,' approaching the public for solicitation of funds refers to itself as 'The Hebrew University'; and that at all times, whenever 'The Hebrew University' is referred to in connection with activities in the United States for the solicitation or collection of funds 'The American Friends of the Hebrew University, Inc.' is referred to as 'The Hebrew University.' ''

"VIII

"That the testator, Louis Cavner at the time of the preparation and execution of his Will intended by Paragraph Eleventh, sub-paragraph (a) of said Will to bequeath one-fourth of the residue of his Estate to The American Friends of the Hebrew University, Inc., as the tax exempt agency of the university in Israel which solicits and collects funds in the United States for the use and benefit of the university in Israel. That at the time of the preparation and execution of said Will, neither the decedent nor his counsel was familiar with the actual name of said agency or knew that the true name of said agency was 'The American Friends of the Hebrew University, Inc.' That the testator described said agency in Paragraph Eleventh, sub-paragraph (a) of his Will as the 'Hebrew University in Israel' fully believing and intending that the beneficiary described in said Paragraph Eleventh, sub-paragraph (a) would be that entity whose name

was in fact 'The American Friends of the Hebrew University, Inc.' ''

Appellant has cited to us for consideration from Page on Wills, 2d edition, page 1526, the following:

''Where a corporation is given an erroneous name in a will such a mistake will not avoid the gift if it is possible by means of the name used, or by admissible extrinsic evidence, to identify the corporation intended as a beneficiary with sufficient certainty.

''No difficulty is presented where a bequest is made to the board of trustees of a specified corporation, and their successors and assigns, and the name has been changed before the execution of the will. While a technical misnomer, the intention of testator in such a case is too clear for mistake.

''A more difficult question is presented where the name given in the will is not the name of any existing corporation. If such corporation can be identified by its location the misnomer will not invalidate the gift. A devise to the 'Congregational Seminary at Forest Grove in Washington County, State of Oregon,' was held to mean the 'President and Trustees of Tualatin Academy and Pacific University,' where such institution had established a Congregational Seminary at Forest Grove and there was no other seminary there. A bequest to the 'Presbyterian Infirmary' situated on a certain street was held to mean the 'Union Protestant Infirmary' situated on the named street. But there was no other organization which could have taken under this bequest.

''Where the name given to the corporation is not that of any existing organization, but resembles to a greater or less degree the name of a corporation engaged in similar work, the gift will be held a gift to such corporation if the admissible evidence indicates that this corporation was intended by testator. In some of these cases the location as well as the purpose helps to identify the beneficiary. In some cases the name which appears in the will is very different from that of the intended beneficiary; but other means of identification may show what beneficiary is intended.''

We are of the belief that there is nothing in such authority which would militate against the respondent in this case to the extent that we should reverse the trial court.

We are bound by the rule as set forth in *Estate of Walden,* 166 Cal. 446 [137 P. 35], and stated in *Estate of Doyle,* 126 Cal.App. 446 (at p. 448 [14 P.2d 909]), as follows: ''Its findings as to the ultimate fact of heirship comes to us

fortified by those favorable presumptions in which an appellate court must invariably indulge in favor of the integrity and correctness of the lower court's determination of all matters of fact, and which in fine require that: 'If there is any evidence in the record, or any reasonable inference to be drawn from such evidence, to sustain the findings of the trial court they cannot be disturbed here.' (*Kienlen* v. *Holt*, 106 Cal.App. 135-140 [288 P. 866].) This fundamental rule of appellate practice applies with equal force to determinations of heirship. (*Estate of Walden*, 166 Cal. 446 [137 P. 35].)''

The respondent asserts that in any event the Controller was without standing in the hearing in the first instance in that he failed to file a written statement setting forth.his interest in the estate as is required by section 1080 of the Probate Code. See *Estate of Ward*, 127 Cal.App.2d 207, where the court, speaking through Mr. Justice McComb said (at p. 209 [273 P.2d 601]) : "The procedure outlined in the foregoing section is clear. It means exactly what it says; that any person claiming an interest in the estate adversely to the petitioner, in order to have a judicial determination thereof, must file a written statement setting forth his interest in the estate."

Although there would appear to be considerable substance to the claim of respondent, under the circumstances of this case we do not find it necessary to determine whether the Controller was properly in the case. ██ Assuming that he did have standing and was properly in the case, there was ample evidence to support the findings of the trial court.

██ It may be true that it is desirable to permit the Controller to participate in probate proceedings (if he is presently not permitted to appear therein), or specifically to exclude the taxing authorities from the binding effect of probate decrees. Such desirability should have no effect on our opinion in this case.

It is a matter for the Legislature to amend the law to permit the taxing authorities to have their day in court and to protect the taxes which the state should perhaps receive. (See *Estate of Radovich*, 48 Cal.2d 116 [308 P.2d 14] ; *Berton* v. *All Persons*, 176 Cal. 610 [170 P. 151] ; *Estate of Bloom*, 213 Cal. 575 [2 P.2d 753].)

The order is affirmed.

White, P. J., and Lillie, J., concurred.