[No. S131807. Aug. 31, 2006.]

THE STATE OF CALIFORNIA ex rel. KAMALA HARRIS, as District Attorney, etc., et al., Plaintiffs and Appellants, v. PRICEWATERHOUSECOOPERS, LLP, et al., Defendants and Appellants.

1222

---

**COUNSEL**

Terrence Hallinan and Kamala D. Harris, District Attorneys, David A. Pfeifer, June D. Cravett and David C. Moon, Assistant District Attorneys; Dennis J. Herrera, City Attorney, Therese M. Stewart, Chief Deputy City Attorney, Joanne Hoeper, Chief Trial Attorney, Ellen M. Forman, Donald P. Margolis and David B. Newdorf, Deputy City Attorneys, for Plaintiffs and Appellants.

Gibson, Dunn & Crutcher, Daniel M. Kolkey, Joel S. Sanders, Mark A. Perry, Ethan D. Dettmer, Rebecca Justice Lazarus and Catherine H. Ahin-Halverson for Defendants and Appellants.

Law Office of Eugene Dong and Eugene Dong as Amicus Curiae.

OPINION

**BAXTER, J.**—The California False Claims Act (CFCA; Gov. Code, § 12650 et seq.) provides that any "person" who knowingly submits a false claim to the State of California, or to a "political subdivision," may be liable in a court action for treble damages and civil penalties. (*Id.*, §§ 12651, 12652.) The suit may be brought by the Attorney General where state funds are involved, or by the "prosecuting authority" of a political subdivision where the political subdivision's funds are involved, subject to intervention and participation by the other official where *both* state and political subdivision funds are involved. (*Id.*, § 12652, subds. (a), (b).)

The statute also includes a "qui tam" feature, under which suit may be brought in the name of a defrauded government entity, whether state or local, by a "person" with independent knowledge of the facts who files an action before anyone else eligible to sue has done so. (Gov. Code, § 12652, subds. (c)(1), (10), (d)(2), (3).) The qui tam plaintiff may conduct the action in the name of the defrauded entity or entities if the latter decline to intervene; even if such intervention occurs, the qui tam plaintiff may remain a party, eligible to receive a portion of the proceeds recovered. (*Id.*, subds. (c)(4), (7)(B), (e)(1), (f)(1), (g)(2)–(6).)

In *Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164 [48 Cal.Rptr.3d 108, 141 P3d 225] (*Wells*), we hold, among other things, that public school districts are not "persons," as defined in the CFCA, who *may be sued* under the terms of that statute. Here we consider whether the City and County of San Francisco (City), represented by its district attorney and city attorney, is a "person" who *may sue*, as a qui tam relator, upon a false claim involving, not its own funds, but *exclusively funds of the State of California*. We conclude that the answer is "no."

## FACTS AND PROCEDURAL BACKGROUND

The history of this lawsuit is complex but, for purposes of this opinion, it can be condensed somewhat. City sued Old Republic Title Company (Old Republic) under the CFCA, the unfair competition law (UCL; Bus. & Prof. Code, § 17200 et seq.), and the false advertising law (*id.*, § 17500 et seq.). The CFCA count alleged that Old Republic had falsified "holder reports" submitted to the State Controller pursuant to the Unclaimed Property Law (UPL; Code Civ. Proc., § 1500 et seq.; see *id.*, § 1530) in order to conceal its failure to escheat dormant funds to the state as required by the UPL. The remaining causes of action, not germane to the issue here presented on review, asserted that Old Republic had used escrow accounts to generate hidden income properly payable as interest to escrow customers, and had

charged customers fees for services not rendered.[1] For purposes of the CFCA count, City claimed that, although it was asserting no false claim against its own funds, it was a "person" with standing to sue on the state's behalf as a qui tam plaintiff.

When City's complaint was unsealed[2] and served on Old Republic, the company remitted to the state some $9.5 million in funds subject to escheat, plus some $7.7 million in statutory interest on those funds. (Code Civ. Proc., § 1577.) City nonetheless maintained its CFCA cause of action for treble damages recoverable under the false claims statute. (Gov. Code, § 12651, subd. (a).)

In the trial court, City's action was consolidated for all purposes with several class actions against Old Republic alleging wrongful customer practices similar to those set forth in City's complaint. Old Republic demurred to City's CFCA cause of action on grounds that City is not a "person" who may sue as a qui tam relator under that statute. The demurrer was overruled. Old Republic's motion for summary adjudication of the CFCA count, premised on similar grounds, was denied.

Upon City's motion for summary adjudication of the CFCA claim, Old Republic conceded liability on that count. The court granted City's motion, determined that the damages for Old Republic's delayed remission of funds subject to escheat were the stipulated UPL interest of $7.568 million, trebled to $22.704 million, and offset by interest already paid, for a net recovery of $15.136 million. The court awarded City, as the qui tam relator, one-third of the trebled damages, or $7.568 million.

The consolidated action proceeded to trial, under the UCL, on the hidden-interest and unearned-fee claims raised by both City and the class plaintiffs. Finding liability on these counts, the court awarded restitution to the class

---

[1] The wrongful financial practices alleged in the non-CFCA counts were entirely unrelated to the "escheat" claims raised by City under the CFCA. City obtained at least some of its information about Old Republic's various alleged illegal practices from Old Republic's former chief financial officer, Donald Barr. After firing Barr for embezzlement in connection with certain of these practices, Old Republic referred the matter to City's district attorney. The district attorney opened an investigation leading to criminal charges against Barr. Barr later negotiated a disposition of the charges in return for providing information against Old Republic.

[2] As noted in *Wells, supra,* 39 Cal.4th 1164, 1188, a qui tam complaint under the CFCA must be filed under seal, and may remain sealed for up to 60 days, with extensions of time available upon timely application, while the Attorney General (in cases involving state funds) or the local "prosecuting authority" (in cases involving political subdivision funds) decides whether to intervene and assume control of the action. (Gov. Code, § 12652, subd. (c)(2), (4)–(8).) During this time, the complaint may not be served on the defendant. (*Id.,* subd. (c)(2).)

totaling $11.554 million, plus stipulated prejudgment interest of $2.211 million. Additionally, on City's complaint, the court assessed UCL civil penalties totaling $2.181 million and awarded injunctive relief.

Meanwhile, City filed an amended complaint naming Pricewaterhouse-Coopers, LLP (PwC), as an additional defendant under the CFCA and UCL causes of action. The amended complaint alleged that PwC was Old Republic's independent public accountant during relevant periods, and was charged, among other things, with preparing Old Republic's annual audit report to the Insurance Commissioner, as required by the Insurance Code.[3] PwC was liable, the amended complaint claimed, for failing in these reports to disclose Old Republic's escheat violations.[4]

PwC demurred to both counts, and also moved for judgment on the pleadings on the CFCA count. The trial court sustained the demurrer without leave to amend on the UCL count. The court ruled that any omissions or misrepresentations by PwC in Old Republic's audit reports under the Insurance Code were immaterial, because the Department of Insurance (DOI) does not police escheat violations. Moreover, the court reasoned, the funds had now been escheated and could be claimed by their owners, so there was no additional remedy to impose.

The court denied PwC's motion for judgment on the pleadings, ruling, as before, that City was a "person" eligible to sue, on the state's behalf, as a qui tam plaintiff under the CFCA. Subsequently, however, the court granted PwC's motion for summary judgment on the CFCA count. Again, the court reasoned that any lapses by PwC in the Insurance Code audit reports were immaterial, because even if these reports had disclosed Old Republic's escheat irregularities, the DOI, in the ordinary course of business, would not have forwarded the information to the State Controller, the officer charged with enforcement of the UPL.

Multiple appeals followed. In a proceeding numbered A097793, Old Republic appealed from the judgment against it in favor of City and the class plaintiffs. In a separate proceeding numbered A095918, City appealed from the dismissal of its action against PwC. PwC cross-appealed in No. A095918, urging, among other things, that City is not a "person" who may sue as a qui tam relator under the CFCA. The appeals were consolidated.

---

[3] Insurance Code section 12389, subdivision (a)(4) requires an underwritten title company such as Old Republic annually to submit to the Insurance Commissioner an audit report certified by independent auditors. The statutory purpose is to "maintain the solvency of the companies subject to this section and to protect the public by preventing fraud and requiring fair dealing." (Ins. Code, § 12389, subd. (d).)

[4] The new allegations against PwC were apparently based on testimony given by PwC managers and auditors at the trial against Old Republic.

The Court of Appeal, in No. A097793, affirmed the judgment against Old Republic in its entirety. In No. A095918, the Court of Appeal reversed both (1) the summary judgment for PwC on City's CFCA cause of action and (2) the dismissal of City's UCL cause of action against PwC after PwC's demurrer was sustained without leave to amend. With respect to the CFCA cause of action, the Court of Appeal rejected PwC's argument that City is not a "person" eligible for qui tam status under that statute.

City and PwC both petitioned for review; Old Republic did not. City urged that in its CFCA action against Old Republic, the trial court and the Court of Appeal should not have limited damages (subject to the treble multiplier) to *interest* on the funds whose escheat to the state was delayed, and should have included the principal amount of the unescheated funds as well.[5] PwC argued that (1) City is not a "person" who can assert qui tam status under the CFCA, (2) the Court of Appeal erred in finding that any misstatements or omissions by PwC from Old Republic's Insurance Code audit reports were "material" for purposes of the CFCA and the UCL, and (3) a UCL claim against PwC could not be premised on an alleged failure to comply with professional accountancy standards.

We denied City's petition and granted PwC's. Our order limited the issue to be briefed and argued to the following: "May a political subdivision bring an action under Government Code section 12652, subdivision (c) [i.e., the CFCA], to recover funds on behalf of the state or another political subdivision?"

Subsequently, counsel for City, Old Republic, and the class plaintiffs stipulated in this court that (1) the issue on which we granted review was presented solely by No. A095918, and had no bearing on No. A097793, and (2) Old Republic had not sought review in either appeal, had paid the judgment in No. A097793, and was entitled to exoneration of its appeal bonds. These parties therefore requested we sever the two appeals and retransfer No. A097793 to the Court of Appeal with directions to issue its remittitur therein forthwith.

PwC's counsel professed PwC's neutrality on the request, and counsel for the class plaintiffs advised that issuance of the remittitur in No. A097793 would allow some $12.5 million paid by Old Republic into a court-ordered fund to be distributed to class members. Accordingly, we severed the two

---

[5] In its petition, City advised that, following the Court of Appeal's judgment, City had settled with Old Republic on terms that precluded any additional recovery by City against Old Republic regardless of the outcome of future proceedings. City nonetheless claimed the issue was not moot because, if its CFCA action against PwC was reinstated, our ruling on the damage issue would be relevant to City's potential recovery against PwC.

appeals and retransferred No. A097793 to the Court of Appeal with instructions to issue its remittitur.[6]

We turn to the issue on which we granted review. We conclude the Court of Appeal erred in holding that City is a "person" who may sue under the CFCA, on behalf of another public entity, as a qui tam plaintiff.[7]

## DISCUSSION

■ Under the CFCA, any "person" who submits a false claim to the "state," or to a "political subdivision," may be sued for treble damages and civil penalties. (Gov. Code, § 12651, subd. (a).) For this purpose, a "political subdivision" includes "any city, city and county, county, tax or assessment district, or other legally authorized local government entity with jurisdictional boundaries." (*Id.*, § 12650, subd. (b)(3).)

The CFCA specifies in detail who may bring and prosecute actions under that statute, depending on whether state or political subdivision funds are involved. If *state* funds are involved, the *Attorney General* may bring the action. (Gov. Code, § 12652, subd. (a)(1).) If *political subdivision* funds are involved, the action may be brought by the political subdivision's "prosecuting authority" (*id.*, § 12652, subd. (b)(1)), i.e., "the *county counsel, city attorney*, or other local government official charged with investigating, filing, and conducting civil legal proceedings on behalf of, or in the name of, [*the*] *particular political subdivision*" (*id.*, § 12650, subd. (b)(4), italics added). Where both state and political subdivision funds are involved, each of these officials may intervene, on behalf of the public entity he or she represents, in an action initiated by the other. (*Id.*, § 12652, subds. (a), (b).)

Under this scheme, the Attorney General, acting in his official capacity, *is not authorized* to sue to recover *exclusively* political subdivision funds. The only official who may do so in such capacity is the "prosecuting authority" representing the "*particular* political subdivision" (Gov. Code, § 12650, subd. (b)(4), italics added) whose funds are involved (*id.*, § 12652, subd. (b)(1)). Conversely, the "prosecuting authority" of a political subdivision, acting in that capacity, *is not authorized* to sue to recover *exclusively* state funds—the only category of funds at issue in this case. The sole official who may do so is the Attorney General. (*Id.*, § 12652, subd. (a)(1).) Nor may

---

[6] As a result of this final disposition of the claims involved in No. A097793, both City and the State of California will retain all sums recovered against Old Republic under the CFCA for violation of the escheat laws. No conclusions reached in this court's opinion will have any operative effect on those recoveries.

[7] An amicus curiae brief, professing to support neither party but essentially supporting PwC on the particular facts of this case, has been filed by Eugene Dong.

the prosecuting authority of one political subdivision sue as such where only the funds of *another* political subdivision are involved. The only official who may do so is the prosecuting authority of the "particular" political subdivision that was actually defrauded. (*Id.*, §§ 12650, subd. (b)(4), 12652, subd. (b)(1).)

There is, however, a third category of eligible plaintiffs under the CFCA. A "person" with independent knowledge of the facts, who gets to the courthouse first, may bring a qui tam action for and in the name of the state (if state funds are involved), or a political subdivision (where the political subdivision's funds are involved), or both. (Gov. Code, § 12652, subds. (c)(1), (10), (d)(2), (3).)

Such a suit is filed under temporary seal (Gov. Code, § 12652, subd. (c)(2)), whereupon the qui tam plaintiff must immediately notify the Attorney General and disclose all pertinent information in the plaintiff's possession (*id.*, subd. (c)(3)). If political subdivision funds are involved, the Attorney General must, in turn, provide similar notice and disclosure to the prosecuting authority of the affected political subdivision. (*Id.*, subd. (c)(7)(A), (8)(A).) After investigation, the pertinent official or officials may intervene in the qui tam suit and assume control of the action. (*Id.*, subd. (c)(4)–(8).) If intervention occurs, the qui tam plaintiff may remain a party. (*Id.*, subd. (e)(1).) If no official intervenes, the qui tam plaintiff may conduct the action. (*Id.*, subd. (c)(6)(B), (7)(D)(ii), (8)(D)(iii).)

When a false claims suit is brought, in the first instance, by the Attorney General, or by the prosecuting authority of a political subdivision, the defrauded entity or entities themselves receive 67 percent of the proceeds. The remaining 33 percent goes to the officials who litigated the case, for use in investigating and prosecuting other false claims against the entities they represent. (Gov. Code, § 12652, subd. (g)(1)(A)–(C).)

When a prosecuting official or officials intervene in an action initiated by a qui tam plaintiff, the plaintiff remains entitled to receive between 15 and 33 percent of the proceeds in addition to the 33 percent official share, leaving as little as 34 percent for the defrauded entity or entities. (Gov. Code, § 12652, subd. (g)(2).) If no prosecuting official intervenes in the action, the qui tam plaintiff may receive up to 50 percent of the proceeds, with the remainder going directly to the defrauded entity or entities. (*Id.*, subd. (g)(3).)

City's district attorney and city attorney, who represent City in this action, closely fit the description of officials who, as prosecuting authorities, may sue upon false claims involving *City's* funds, but have no official prosecutorial jurisdiction over false claims that involve only *state* funds. Indeed, City

concedes that neither it nor its legal representatives were authorized to sue as prosecuting authorities in this case, because only state funds, and no funds of City itself, are at issue. Nonetheless, City urges, it may proceed through these same officers on the state's behalf simply as a "person" eligible to sue under the statute's "qui tam" provision. We disagree.

■ The CFCA contains a single definition of "person" as including "any natural person, corporation, firm, association, organization, partnership, limited liability company, business, or trust." (Gov. Code, § 12650, subd. (b)(5).) Absent contrary indications, we assume the Legislature intended the same meaning of "person" to delineate both who *may be sued* under the statute, and who *may sue under its qui tam provision.* (But see text discussion, *post.*)

In *Wells, supra,* 39 Cal.4th 1164, we consider whether public school districts are "persons" who *may be sued* under the CFCA. Answering that question "no," we conclude, among other things, that the language of this particular statute weighs heavily against a determination that public or governmental entities are covered "persons."

As we explain in *Wells,* the CFCA's enumeration of included "persons" "contains no words or phrases most commonly used to signify . . . public entities or governmental agencies." (*Wells, supra,* 39 Cal.4th 1164, 1189–1190.) Yet, in other contexts the CFCA "makes very specific reference to governmental entities," including both the state and "political subdivisions," which are defined to include every kind and form of local government with jurisdictional boundaries, including cities, counties, and cities and counties. (*Id.* at p. 1190; see Gov. Code, § 12650, subd. (b)(3).) Moreover, *Wells* notes, in other statutes, "the Legislature has demonstrated that . . . definitions of 'persons' [similar to that set forth in the CFCA] do not include public entities, and that legislators know how to include such entities directly when they intend to do so." (*Wells, supra,* at p. 1190; see also *id.* at pp. 1190–1191, & fn. 12, and examples therein described.)

■ These points are particularly telling in the determination whether public entities, such as City, are "persons" who may *sue,* as qui tam relators, under the CFCA. As noted above, the statute has carefully separated the officials who may bring false claims actions, *on behalf of the public entities they represent,* when *those particular entities'* funds are involved in the alleged false claims, from the "persons" who, partly in hopes of self-enrichment, may bring such actions *regardless* of the particular public entity whose funds are involved.

The obvious purpose of these provisions is to delineate the boundaries of official jurisdiction, to make each public entity's prosecuting officer or

officers responsible only for funds falsely claimed from that entity, and to preclude one government agency's false claims jurisdiction from intruding on another's. In logical fashion, each designated prosecuting officer is made responsible for "diligently" investigating and pursuing false claims on behalf of his or her own entity (Gov. Code, § 12652, subds. (a)(1), (b)(1)), but not on behalf of others. Nothing in the CFCA implies that such cross-agency investigation and intrusion may nonetheless occur through the indirect device of qui tam actions by one public entity on behalf of another.

Indeed, the language of the CFCA contains one explicit indication that governmental entities, state or local, are not among the intended class of "persons" who may sue as qui tam relators. In providing that a qui tam complaint shall be filed under seal (a requirement not applicable to actions initiated by the Attorney General for the state, or by prosecuting authorities for their own political subdivisions), the statute describes such a complaint as one "filed by a *private* person." (Gov. Code, § 12652, subd. (c)(2), italics added.)

In *Wells*, we also note that the limited evidence available from the CFCA's legislative history suggests public entities were not intended as "persons" covered by the statute. "As originally introduced on March 4, 1987, Assembly Bill No. 1441 (1987–1988 Reg. Sess.) . . . , which in final form became the CFCA, explicitly included, as covered 'persons,' 'any person, firm, association, organization, partnership, business trust, corporation, company, *district, county, city and county, city, the state, and any of the agencies and subdivisions of these entities.*' [Citation.] A substantial subsequent amendment to the bill *excised the references to government entities*, and the definition of 'person' was changed to the form finally adopted. [Citation.]" (*Wells*, *supra*, 39 Cal.4th 1164, 1191.)

With respect to the specific issue before us in this case—whether the CFCA contemplates public entities as qui tam *plaintiffs*—the history of Assembly Bill No. 1441 (1987–1988 Reg. Sess.) (Assembly Bill No. 1441) provides additional insights. On May 6, 1987, after the bill was amended in the Assembly on April 29, 1987, to delete the specific references to public entities as "persons," the Assembly Judiciary Committee heard testimony from David Huebner, representing the Center for Law in the Public Interest, which participated in drafting both the current federal and California false claims statutes. Huebner described the proposed California law as "deputizing *citizens* to join the fight to protect the public treasury." (Assem. Com. on Judiciary, Hearing on Assem. Bill No. 1441 (1987–1988 Reg. Sess.) May 6, 1987, testimony of David Huebner, p. 3, italics added (Huebner Testimony).)

Huebner explained that "the Justice Department and local prosecuting authorities do not have unlimited resources and should be able to benefit from additional *non-governmental* resources brought to bear on their behalf. The driving force behind the false claims concept is the providing of incentives for *individual citizens* to come forward with information uniquely in their possession and to thus aid the Government in [ferreting] out fraud. This false claims legislation provides a mechanism for harnessing such *non-governmental* resources, *at no additional cost to the government*." (Huebner Testimony, *supra*, p. 3, italics added.) Huebner noted, as one of the bill's principal benefits, that "taxpayers see their elected representatives acting decisively and calling upon the source of the funds, *the taxpayers themselves*, for assistance." (*Id.*, at p. 4, italics added.)

Moreover, Huebner testified, "the False Claims bill before you encourages cooperation between state and local authorities by setting out a framework for deciding whether the state or local authorities have jurisdiction over particular cases involving mixed funds. Providing such a framework is essential to effective, efficient investigation and enforcement." (Huebner Testimony, *supra*, pp. 3–4.)

The Legislature could reasonably conclude that these purposes are undermined by allowing a local government entity to step outside the specified jurisdictional boundaries, and to bring qui tam actions *exclusively* on behalf of *other* units of government. Such a system raises concerns that scarce government resources might be wasted on duplicative, overlapping, and competitive investigations of possible false claims. Though a qui tam action brought by one government entity exclusively on behalf of another might succeed, thus enriching the coffers of both, it might also fail, resulting in the irretrievable loss of taxpayer dollars and public resources expended by the "qui tam" agency in its effort to recover funds owed exclusively to a *different* agency.

The CFCA certainly seeks to induce private "whistleblowers," uniquely armed with information about false claims, to risk the failure of their qui tam suits in hopes of sharing in a handsome recovery if they succeed. Indeed, this prospect of reward may be the only means of inducing such private parties to come forward with their information. The statute further sweetens the deal by sanctioning qui tam actions that "jump the gun" on the defrauded public agencies. Thus, a qui tam suit is barred if the defrauded entity gets to the courthouse first (Gov. Code, § 12652, subd. (d)(2)), but if the qui tam plaintiff wins that race, he or she may file suit, and thus secure the right to share in any recovery, *before* he or she shares with the defrauded entity any information bearing on the claim (see *id.*, subd. (c)(3)).

This carefully balanced scheme enlists "nongovernmental" resources—informants acting partly in their own self-interest—in the battle to ferret out and prosecute public fraud. On the other hand, it costs the government nothing in time, resources, or money beyond what a defrauded entity might spend to investigate and prosecute on its own behalf.

Allowing public agencies to act as qui tam plaintiffs, however, may encourage some agencies, seeking risky paydays, to employ taxpayer funds, and to divert time and resources from their usual public duties, in order to speculate in qui tam litigation on the sole behalf of other agencies. It may also encourage some public entities, acting for their own enrichment, to *compete* with each other in races to the courthouse, or to withhold relevant information from their defrauded colleagues, so they can file "surprise" qui tam suits and share in the defrauded entities' recoveries. These significant policy concerns counsel against a conclusion, absent a clearer expression of purpose, that the Legislature meant to authorize qui tam suits by public entities. The issue is best left to the Legislature's specific attention, at its discretion.[8]

Nonetheless, City asserts multiple grounds for concluding that it is a "person" who can sue under the CFCA, as a qui tam plaintiff, on behalf of the state. None of these arguments is persuasive.

First, City argues that the plain language of the CFCA supports its interpretation. City urges that the statutory definition of "person" is expansive and inclusive, and particularly enumerates "corporations," which encompass municipal corporations. (See *City of Pasadena v. Stimson* (1891) 91 Cal. 238, 248, 252 [27 P. 604] [persons natural or artificial, and thus corporations public or private, and thus municipal corporations, are "persons" for purposes of statute allowing any "person" to acquire property by condemnation for sewerage purposes]; *Blum v. City & County of San Francisco* (1962) 200 Cal.App.2d 639, 644 [19 Cal.Rptr. 574] [City and County of San Francisco is a municipal corporation].) City also asserts that it is an "organization," and the CFCA does not expressly limit its coverage to "private" organizations.

However, as we explain in *Wells*, and discuss further above, there are numerous indications in the language, structure, and history of the CFCA that the Legislature did not intend *this particular* statute to include public entities as "persons." Moreover, though City insists otherwise, the specific statutory reference to qui tam suits by "private person[s]" (Gov. Code, § 12652,

---

[8] Our discussion of these issues in the abstract is not meant to impugn City's motives or actions in this lawsuit.

subd. (c)(2)) provides additional support for the view that public entities are not "persons" who may bring actions of that kind.[9]

Moreover, we have determined in this opinion that, by carefully delineating the jurisdictional responsibilities of designated public officials who may sue on behalf of particular entities, state or local, the CFCA implicitly excludes such officials as "persons" who may sue on behalf of *other* public entities. (See discussion, *ante.*) City points out, however, that "persons" suing as qui tam relators are not the exact equivalents of the statutorily designated officials suing on behalf of their own agencies. As indicated above, when a qui tam suit is filed, the relevant state or local officials must be notified, and they have the right to intervene and assume control of the action. (Gov. Code, § 12652, subds. (c)(3)–(8), (e)(1).) "Persons" otherwise eligible to bring qui tam actions have no similar right to notice and intervention in actions initiated by prosecuting officials on behalf of their own agencies, and the filing of such a suit cuts off the right to bring a qui tam action based on the same "allegations or transactions." (*Id.*, subd. (d)(2).)

Thus, City argues, recognizing a public entity's right to sue as a qui tam relator solely on behalf of other agencies—subject to their right to intervene and assume control—is not necessarily at odds with the jurisdictional limits on public *prosecutorial* authority set forth in the statute. However, we adhere to our view that the careful statutory distinction between public prosecutorial authorities, on the one hand, and "persons" who may bring qui tam actions on the other, suggests the Legislature did not intend to recognize public entities as qui tam relators.

---

[9] City points out that the Legislative Counsel's Digest for the original version of Assembly Bill No. 1441 declared the bill (which, as introduced, covered only false claims against the State of California) would authorize "the Attorney General and any *other* person" to sue on the state's behalf. (Legis. Counsel's Dig., Assem. Bill No. 1441 as introduced Mar. 4, 1987, italics added.) But that version of the bill specifically *included* all state and local entities as "person[s]." (See discussion, *ante.*) As City observes, when the bill was amended to include false claims against political subdivisions also, to designate local officials who could sue on behalf of such political subdivisions, and to delete the references to public entities as "persons," the Legislative Counsel's Digest continued to indicate that suits could be maintained by "the Attorney General, the prosecuting authority of a political subdivision and *any other person.*" (Legis. Counsel's Dig., Assem. Bill No. 1441, 4 Stats. 1987, Summary Dig., p. 523, italics added.) On this basis, City urges the Legislature must have intended such officials to be "persons" with the authority to bring qui tam suits. We are not persuaded. Retention by the Legislative Counsel of the word "other" for subsequent versions of the bill may well have been an oversight, failing to take account of the fact that public entities had been removed from the definition of "person." In any event, the Legislative Counsel's declarations are not binding or persuasive where contravened by the statutory language, and by other indicia of a contrary legislative intent. (E.g., *People v. Cruz* (1996) 13 Cal.4th 764, 780 [55 Cal.Rptr.2d 117, 919 P.2d 731].)

City urges that "persons" who may bring qui tam actions under the *federal* false claims statute (FFCA; 31 U.S.C. § 3729 et seq.) include the several states. For a number of reasons, City's analysis of federal law does not convince us that the CFCA permits qui tam suits by public entities.

In the first place, as we explain in *Wells*, though the CFCA was patterned after the FFCA as then recently amended, there are significant differences between the two statutes. In particular, we note at the outset, the FFCA does not define the word "person," while its California counterpart supplies a definition that appears to exclude public entities as "persons" for any purpose under its provisions. (See *Wells, supra,* 39 Cal.4th 1164, 1197; see also discussion, *ante.*)

City cites federal case law for the proposition that the states are proper qui tam relators under the FFCA. However, no decision has directly so held. In *United States ex rel. State of Wis. v. Dean* (7th Cir. 1984) 729 F.2d 1100 (*Dean*), Wisconsin was the qui tam plaintiff, but no party questioned the state's standing, as such, to bring such an action. The issue was simply whether provisions of the FFCA then in effect, which barred a qui tam action based on information already known to the federal government at the time the suit was filed, were applicable if the source of the government's knowledge was the qui tam relator itself. *Dean* held that the bar applied in such cases.

In *Minnesota Ass'n of Nurse Anesthetists v. Allina* (8th Cir. 2002) 276 F.3d 1032, which involved no public entity plaintiff, an issue was whether a private association could satisfy the FFCA's requirement that the qui tam relator have "direct" knowledge of the false claim, insofar as an organization must glean its information from individuals. Holding that the association could be a qui tam plaintiff using knowledge obtained from its members, the court of appeals commented, among other things, that "[t]here is no hint in the history of the 1986 [amendments to the FFCA] that Congress intended to disqualify *organizational* relators. To the contrary, any such rule would have disqualified the State of Wisconsin from proceeding as relator in *Dean . . . .*" (*Minnesota Ass'n of Nurse Anesthetists, supra,* at p. 1049, italics added.) Again, however, neither of these decisions directly presented, or decided, the issue whether *public* entities may sue as qui tam plaintiffs under the FFCA.

City points to certain legislative history of the 1986 amendments to the FFCA. These amendments, which slightly preceded enactment of the California statute, substantially revised the federal law. Among other things, the FFCA was altered, in response to *Dean,* to narrow the circumstances in which a qui tam action based on facts or evidence already known to the federal government is barred. (See 31 U.S.C. § 3730(e)(2)(A), as added by Pub.L.

No. 99-562 (Oct. 27, 1986) § 3, 100 Stat. 3154, 3157 [bar applies where suit is against member of Congress, member of the judiciary, or senior executive branch official].)

As City observes, the Senate Judiciary Committee Report for the bill incorporating the 1986 amendments (Sen. No. 1562, 99th Cong., 2d Sess. (1986)), in discussing the *Dean* issue, included the following passage: "The National Association of Attorneys General adopted a resolution in June of 1984 stating that 'to prohibit sovereign states from becoming *qui tam* plaintiffs because the U.S. Government was in possession of information provided to it by the State and declines to intercede in the State's lawsuit, unnecessarily inhibits the detection and prosecution of fraud on the Government.' The resolution goes on to strongly urge that Congress amend the False Claims Act to rectify the unfortunate result of the *Wis. v. Dean* decision." (Sen. Rep. No. 99-345, 2d Sess. (1986), reprinted in 1986 U.S. Code Cong. & Admin. News, pp. 5266, 5279.)

However, despite an apparent assumption by the quoted organization that states were proper qui tam plaintiffs under the FFCA, nothing in the 1986 amendments themselves speaks to this issue. While Congress amended the statute to ameliorate the "source of information" problem—which could arise whether the potential qui tam plaintiff is public or private—it did nothing to indicate specifically that the states, or other public entities, are "persons" with standing to bring qui tam actions.

Post-1986 federal decisions involving states as qui tam relators similarly do not directly address or determine whether their status *as public entities* affects their standing to bring qui tam actions. These cases simply note that, by virtue of the 1986 amendments, the *Dean* holding has been superseded, and states are not barred as qui tam plaintiffs *for the reason* that they provided the federal government with the pertinent false claims information before filing suit themselves. (*U.S. ex rel. Hartigan v. Palumbo Bros., Inc.* (N.D.Ill. 1992) 797 F.Supp. 624, 630–631; cf. *U.S. ex rel. Findley v. FPC-Boron Employees' Club* (D.C. Cir. 1997) 323 U.S.App. D.C. 61 [105 F.3d 675, 680, & fn. 1].)[10]

---

[10] As noted in *Wells*, the FFCA was originally adopted in 1863 to combat massive contractor fraud during the Civil War. (*Wells, supra,* 39 Cal.4th 1164, 1197.) City cites a passage from the Senate floor debate on the 1863 bill in which the bill's sponsor, Senator Howard, indicated in passing his view that qui tam relators would not be limited to "the informer[s] who come[] into court to betray [their] coconspirator[s]," and that "[e]ven the district attorney, who is required to be vigilant in the prosecution of such cases, may also be the informer, and entitle himself to one half the forfeiture . . . and . . . damages . . . ." (Remarks of Sen. Howard, Cong. Globe, 37th Cong., 3d Sess. (1863) pp. 955–956.) But the opinion of a single legislator about who might be "persons" entitled to bring qui tam suits under the 1863 federal statute is of little relevance to what the California Legislature intended when, in 1987, it adopted California's law containing a definition of "person," not shared by the federal version, that appears to

Insofar as it has been *assumed* that the FFCA permits qui tam actions by states, such assumptions may be based on considerations that differ significantly between the federal and California statutes. State and local public entities often have relationships with the federal government that make them privy to false claims against the national treasury; by the same token, allowing such entities to sue as qui tam relators on the federal government's behalf does not create an undue danger of interference with the single official—the Attorney General of the United States—designated to represent the government directly in such suits. On the other hand, the CFCA gives not only the California Attorney General, but numerous local officials, direct statutory authority to prosecute false claims action on behalf of the entities they represent. Additionally to recognize *the same* state or local entities as "persons" who may bring qui tam suits, under the CFCA, on behalf of *other* state and local entities risks widespread overlap and competition among such California officials acting in dual capacities.

City notes the United States Supreme Court's recent holding that certain local government agencies, including counties and cities, are "persons" who *may be sued* under the FFCA. (*Cook County v. United States ex rel. Chandler* (2003) 538 U.S. 119 [155 L.Ed.2d 247, 123 S.Ct. 1239]; but see *Vermont Agency of Natural Resources v. United States ex rel. Stevens* (2000) 529 U.S. 765 [146 L.Ed.2d 836, 120 S.Ct. 1858] [states are *not* persons subject to suit under FFCA].) However, as we have explained both in *Wells, supra,* 39 Cal.4th 1164, 1197–1198, and in this opinion, the federal and California statutes differ significantly with respect to their treatment of "persons." Since 1863 the FFCA has left that term entirely for interpretation under federal common law (see *Chandler, supra,* at p. 125), while the CFCA's more specific definition of the word, viewed in context of the California statute's structure and history, suggests an intent to exclude public entities.

City argues that, under California principles, statutes applying to "persons" are deemed to include public entities unless such inclusion would infringe the entities' sovereign powers. (E.g., *City of Los Angeles v. City of San Fernando* (1975) 14 Cal.3d 199, 276–277 [123 Cal.Rptr. 1, 537 P.2d 1250]; *Nestle v. City of Santa Monica* (1972) 6 Cal.3d 920, 933 [101 Cal.Rptr. 568, 496 P.2d 480]; see *Wells, supra,* 39 Cal.4th at p. 1192.) City suggests that even if inclusion of public entities as "persons" who *may be sued* under the CFCA would infringe such powers, allowing public entities *to sue* as qui tam *plaintiffs*

---

exclude public entities. The quotation of Senator Howard's remarks in federal case law which does not directly address the standing of public entities as qui tam relators is also of little help. (See *U. S. ex rel. Marcus v. Hess* (1943) 317 U.S. 537, 546 [87 L.Ed. 443, 63 S.Ct. 379] [private qui tam plaintiff; decision holds, under then extant version of FFCA, that qui tam relator need not have independent knowledge of the facts, and might obtain his information from reading criminal indictment].)

under the CFCA would not have that effect. Thus, City urges, we may hold it is a "person" for purposes of bringing qui tam actions, even if we conclude (as we do in *Wells*) that public entities are not "persons" who can be *defendants* under the CFCA.

For example, City observes, we held in *People v. Centr-O-Mart* (1950) 34 Cal.2d 702 [214 P.2d 378] (*Centr-O-Mart*), that the State of California was a "person" who could sue to enforce the Unfair Practices Act (UPA; Bus. & Prof. Code, § 17000 et seq.), even though the state was not expressly included in the statute's definition of "person" as "includ[ing] any person, firm, association, organization, partnership, business trust, company, corporation or municipal or other public corporation" (*id.*, § 17021). In *Centr-O-Mart*, we applied the principle that laws in derogation of sovereignty must be strictly construed in favor of the state, and that statutes will not be interpreted to impair or limit the state's sovereign power to act in its governmental capacity. (*Centr-O-Mart, supra*, at pp. 703–704.) Noting that the express purpose of the UPA was to " 'safeguard the public,' " we held that, though not specifically mentioned in the statute, the state, through its law enforcement officers, was a proper party to bring suit for that purpose. (*Centr-O-Mart, supra*, at p. 704, italics omitted.)

On the other hand, City points out, *Community Memorial Hospital v. County of Ventura* (1996) 50 Cal.App.4th 199 [56 Cal.Rptr.2d 732] later held that a county is not a "person" who may be sued under the UPA. Distinguishing *Centr-O-Mart*, the *Community Memorial Hospital* court reasoned that in the earlier case, exclusion of the state as a "person" who could sue under the UPA would have undermined the state's sovereign power to act in its governmental capacity, while a determination that a county can be sued under the statute would also have that effect. Hence, the Court of Appeal concluded, "[t]he same rule that compelled the court in *Centr-O-Mart* to conclude the state was a person for the purpose of bringing an action compels us to conclude the County is not liable under the [UPA]." (*Community Memorial Hospital, supra*, at p. 211.)

In *Wells*, we conclude, among other things, that recognizing CFCA suits against public entities would undermine their sovereign powers by impeding their fiscal ability to carry out their core missions. (*Wells, supra*, 39 Cal.4th 1164, 1193–1196.) However, as already indicated, we have independently determined for other reasons that the Legislature did not intend the CFCA to apply to public entities, *either* as defendants or as plaintiffs. Indeed, we have discerned particular indicia that public agencies were not intended as qui tam

relators under the statute. Accordingly, the mere fact that allowing public entities to bring qui tam actions might not undermine their sovereign powers—an issue we do not address—does not dissuade us from our view that they are not proper qui tam plaintiffs under the CFCA.

Citing the CFCA's proviso that the statute must be liberally construed to promote the public interest (Gov. Code, § 12655, subd. (c)), City contends at length that recognizing public entities as qui tam relators furthers the purposes of the false claims law. Such a construction, City urges, broadens the range of actors available to ferret out and redress fraud against the government. Indeed, City argues, political subdivisions like City are *more* attractive qui tam plaintiffs than private persons and entities, because public entities' decision makers "are constrained by political accountability to utilize the [CFCA] judiciously and wisely, avoiding reckless suits." This accountability, City argues, belies PwC's contention that allowing qui tam actions by public entities would encourage them to divert their prosecuting officials from their usual law enforcement duties within their own jurisdictions.

Moreover, City insists, the CFCA contains safeguards against "opportunistic" suits, and unfair windfall recoveries, by "public" qui tam plaintiffs that sue on behalf of other public entities. In particular, City points to those statutory provisions that allow the defrauded entity itself to intervene, assume control, and even settle the action despite the qui tam plaintiff's objections.

The fact remains that the construction urged by City provides an *opportunity* for public entities, acting in their financial self-interest, to *withhold* pertinent information that fellow agencies of government have been defrauded, then race their colleagues to the courthouse in hopes of obtaining a "cut" of the proceeds that would otherwise accrue to the defrauded entities and their prosecuting authorities. For the reasons we have explained in detail, the Legislature reasonably could decide to avoid such a scheme, and we see no evidence that it intended to create one.

■ We therefore conclude that public entities, such as City, are not "persons" who may bring qui tam actions on behalf of other agencies of government under the CFCA. Insofar as the judgment of the Court of Appeal is premised on a contrary conclusion, it must therefore be reversed.

## CONCLUSION

The Court of Appeal's judgment is reversed insofar as it concludes City may proceed with its false claims action, on behalf of the State of California, against defendant PricewaterhouseCoopers, LLP. The cause is remanded to the Court of Appeal for further proceedings consistent with the views expressed in this opinion.

George, C. J., Kennard, J., Chin, J., Moreno, J., Corrigan, J., and Irion, J.,[*] concurred.

---

[*]Associate Justice of the Court of Appeal, Fourth Appellate District, Division One, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.