Filed 7/23/25  Prince v. Wagner CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| WALTER NEWELL PRINCE on behalf of COUNTY OF LOS ANGELES and CITY OF LONG BEACH,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>DONALD P. WAGNER et al.,<br><br>Defendants and Respondents. | B339898<br><br>(Los Angeles County Super. Ct. No. 23STCV15903) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Christopher K. Lui, Judge.  Affirmed.

Graham and Associates and Anthony G. Graham for Plaintiff and Appellant.

Leon J. Page, County Counsel, Nicole M. Walsh, Senior Assistant County Counsel, and Stephanie N. Clark, Deputy County Counsel, for Defendants and Respondents.

_____

Walter Prince appeals from a judgment entered after the trial court sustained without leave to amend the demurrer filed by the County of Orange (the County), the Orange County Flood Control District (the District), and Donald Wagner (collectively the County defendants).  Prince's amended *qui tam* complaint filed on behalf of the County of Los Angeles (Los Angeles County) and the City of Long Beach (Long Beach), alleged the County Defendants violated the False Claims Act (Gov. Code, § 12650 et seq.; CFCA)[1] by conspiring to deprive Los Angeles County and Long Beach of permit fees and property taxes related to property located within the Rossmoor Retarding Basin, which is located partially in Los Angeles County and partially in the County.

In sustaining the demurrer, the trial court held the County defendants were public entities that could not be sued under the CFCA.  On appeal, Prince contends the court erred because the County defendants fell within the CFCA's definition of "persons" against whom CFCA claims may be brought.  Contrary to Prince's contention, the County defendants are not "persons" subject to suit under the CFCA, because they are governmental entities and (as to Wagner) a government employee acting in his official capacity.  We affirm.

_____

[1]	Further undesignated statutory references are to the Government Code.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    *The First Amended Complaint*

On July 7, 2023 Prince filed a *qui tam* complaint, followed by an amended complaint against the County defendants,[2] alleging a single cause of action for violations of sections 12650 and 12651 of the CFCA.[3]  Prince alleged that in around 1977 the County defendants commenced a decades-long project to construct the Rossmoor Retarding Basin, which was designed to contain water during severe rainstorms, and a pumping station to transfer water from the basin to an adjoining creek.  Prince alleged the County defendants failed to pay various permitting fees and property taxes over 25 years, resulting in lost revenue for Los Angeles County and Long Beach.  The amended complaint sought treble damages, a civil penalty, and costs and expenses under the CFCA.

### B.    *The Demurrer To the First Amended Complaint*

On March 21, 2024 the County defendants filed a demurrer to Prince's first amended complaint.  The County defendants argued that governmental entities and government employees sued for acts taken in their official capacity are not considered "persons" who can be sued under the CFCA.  (§ 12650,

---

[2]    Prince sued Donald Wagner in his capacity as chairperson of the County Board of Supervisors.

[3]    As required under the CFCA, Prince filed his *qui tam* action under seal to allow the Attorney General or appropriate political subdivision to determine whether to intervene as plaintiff and proceed with the action.  (§ 12652, subd. (c).)  Los Angeles County and Long Beach filed a notice stating they would not intervene in the action.  (§ 12652, subd. (c)(7).)

subd. (b)(5).)  The County defendants also argued the complaint was barred by the applicable statutes of limitations, the CFCA could not be used to pursue claims under the Revenue and Taxation Code, and the complaint was uncertain and unintelligible.[4]

## C.     *The Trial Court's Ruling and Notice of Appeal*

On May 23, 2024 the trial court sustained the demurrer without leave to amend.  The court ruled the County defendants could not be sued because, as public entities, they were not "persons" under the CFCA.  Alternatively, the court held Prince's claim was barred by the CFCA's 10-year statute of limitations because the last alleged act occurred between 1982 and 2002.

Prince filed a notice of appeal on July 17, 2024, before the trial court entered a signed dismissal or other appealable order. (See *Vibert v. Berger* (1966) 64 Cal.2d 65, 67 ["our courts have held it to be 'hornbook law that [an] order sustaining a demurrer is interlocutory, is not appealable, and that the appeal must be taken from the subsequently entered judgment'"]; see generally Code Civ. Proc., § 581d [all dismissals ordered by the court "shall be in the form of a written order signed by the court and filed in the action"].)  However, the trial court entered a judgment in favor of the County defendants on July 11, 2025.  We therefore treat the premature notice of appeal as filed immediately after entry of the judgment.  (Cal. Rules of Court, rule 8.104(d)(1).)

---

[4]     Because we conclude the County defendants could not be sued under the CFCA, we do not reach the alternative grounds for dismissal.

**DISCUSSION**

A.     *Standard of Review*

        "'In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory.'" (*Matthews v. Becerra* (2019) 8 Cal.5th 756, 768; accord, *T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.) When evaluating the complaint, "we assume the truth of the allegations." (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 209; accord, *Lee v. Hanley* (2015) 61 Cal.4th 1225, 1230.) However, we do not accept the truth of conclusions of fact or law alleged in the complaint. (*Centinela Freeman Emergency Medical Associates v. Health Net of California, Inc.* (2016) 1 Cal.5th 994, 1010 ["'"'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.'"'"].)

        In cases involving statutory interpretation, "our core task . . . is to determine and give effect to the Legislature's underlying purpose in enacting the statues at issue." (*McHugh v. Protective Life Ins. Co.* (2021) 12 Cal.5th 213, 227; accord, *Jarman v. HCR ManorCare, Inc.* (2020) 10 Cal.5th 375, 381.) "We first consider the words of the statutes, as statutory language is generally the most reliable indicator of legislation's intended purpose.  [Citation.]  We consider the ordinary meaning of the relevant terms, related provisions, terms used in other parts of the statute, and the structure of the statutory scheme." (*McHugh*, at p. 227; accord, *Jarman*, at p. 381 ["We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope

5

and purpose and to harmonize the various parts of the enactment.'"].)

"""Ultimately we choose the construction that comports most closely with the apparent intent of the lawmakers, with a view to promoting rather than defeating the general purpose of the statute.""" (*1550 Laurel Owner's Assn., Inc. v. Appellate Division of Superior Court of Los Angeles County* (2018) 28 Cal.App.5th 1146, 1151; accord, *Shorts v. Superior Court* (2018) 24 Cal.App.5th 709, 720.) """If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy."" (*City of San Jose v. Superior Court* (2017) 2 Cal.5th 608, 616-617.)

B.    *The Trial Court Did Not Err in Sustaining the Demurrer*
       1.    *The CFCA,* Wells*, and* Harris
       The CFCA provides in section 12651, subdivision (a), that a "person" violates the act if the person, among other things, "(1) [k]nowingly presents or causes to be presented a false or fraudulent claim for payment or approval[;]  [¶] . . . [¶] (3) [c]onspires to commit a violation of this subdivision[;] [¶] . . . [¶]  [or] (7) knowingly and improperly avoids, or decreases an obligation to pay or transmit money or property to the state or to any political subdivision."  The CFCA defines "'[p]erson'" as "any natural person, corporation, firm, association, organization, partnership, limited liability company, business, or trust." (§ 12650, subd. (b)(9).)  A person who violates the CFCA is liable to the state or to the political subdivision "for three times the amount of damages that the state or political subdivision

6

sustains because of the act of that person," civil penalties, and costs of suit.  (§ 12651, subd. (a).)

The Attorney General or the prosecuting authority of a political subdivision may bring an action for violation of the CFCA.  (§ 12652, subds. (a)(1) & (b)(1).)  A "person" may also bring a CFCA claim as a "qui tam" plaintiff in the name of the state or a political subdivision whose funds are involved.  (*Id.*, subd. (c)(1).)  When a qui tam plaintiff files an action under the CFCA, the Attorney General or the prosecuting authority "may elect to intervene" or "[decline] to proceed with the action."  (*Id.*, subd. (c)(4), (6), & (7).)  The *qui tam* plaintiff is entitled to a substantial percentage of any proceeds from an action under the CFCA, including up to 33 percent of the proceeds obtained by the state or political subdivision if one or both entities proceed with an action filed by the qui tam plaintiff (*id.*, subd. (g)(2)), and up to 50 percent of the proceeds if the qui tam plaintiff proceeds with the action (*id.*, subd. (g)(3)).

The County and District argue they are not "persons" subject to suit under the CFCA because they are governmental entities, relying on the Supreme Court's decisions in *Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164 (*Wells*) and *State ex rel. Harris v. PrincewaterhouseCoopers, LLP* (2006) 39 Cal.4th 1220 (*Harris*).  *Wells* and *Harris* are directly on point and support the County and District's position.

In *Wells*, a group of charter school students and their parents sued charter schools, their corporate operators, and the public school districts that provided oversight to the charter schools (collectively, charter school defendants) for CFCA violations.  (*Wells*, *supra*, 39 Cal.4th at pp. 1178-1179.)  They alleged the charter school defendants submitted false claims to

7

receive state funding but failed to provide the equipment, supplies, and services to the enrolled students necessary for the internet home instruction the charter school operators had promised. (*Id.* at pp. 1180-1182.) The charter defendants demurred, arguing as to the CFCA cause of action that as public entities they were not "persons" subject to suit under the CFCA. (*Id.* at p. 1183.) The trial court sustained the demurrer with respect to the CFCA claims without leave to amend, and the plaintiffs appealed. (*Ibid.*)

The Supreme Court held that governmental entities, including public school districts, are not "persons" subject to suit under the CFCA. (*Wells*, *supra*, 39 Cal.4th at p. 1193.) The court focused on the "usual and ordinary meanings" of the words used to define the term "persons," which, as discussed, included "any natural person, corporation, firm, association, organization, partnership, limited liability company, business, or trust." (*Id.* at p. 1190; see § 12650, subd. (b)(5).) The court added, "While, in the broadest sense, a school district might be considered an 'association' or an 'organization,' the statutory list of 'persons' contains no words or phrases most commonly used to signify public school districts, or, for that matter, any other public entities or governmental agencies." (*Wells*, at p. 1190.)

The Supreme Court observed that the CFCA specifically referenced governmental entities in other parts of the statute. (*Wells*, *supra*, 39 Cal.4th at p. 1191.) The statute provides that any "person" who presents a false claim to the state or "political subdivision" is subject to suit. (§ 12651, subd. (a).) Further, the statute provides "[f]or purposes of this article" (the CFCA) that a "'[p]olitical subdivision' includes any city, city and county, county, tax or assessment district, or other legally authorized local

8

governmental entity with jurisdictional boundaries." (§ 12650, subd. (b) & (b)(6).) The court reasoned, "The specific enumeration of state and local governmental entities in one context, but not in the other, weighs heavily against a conclusion that the Legislature intended to include public school districts as 'persons' exposed to CFCA liability." (*Wells*, at p. 1190).

*Wells* also relied on the legislative history of the CFCA, noting that "deletions from bills prior to their passage are significant indicia of legislative intent." (*Wells*, *supra*, 39 Cal.4th at pp. 1191-1192.) The court stated, "Assembly Bill No. 1441 (1987-1988 Reg. Sess.) (Assembly Bill No. 1441), which in final form became the CFCA, explicitly included, as covered 'persons,' 'any person, firm, association, organization, partnership, business trust, corporation, company, *district, county, city and county, city, the state, and any of the agencies and political subdivisions of these entities*.' (Italics added.)" (*Id.* at p. 1191.) However, "subsequent amendment to the bill *excised the references to governmental entities*." (*Ibid.*) Thus, the court concluded, "[T]he language, structure, and history of the particular statute before us—the CFCA—strongly suggest that public entities, including public school districts, are not 'persons' subject to suit under the law's provisions. On that basis alone, we are persuaded that governmental agencies, including the district defendants in this case, may not be sued under California's false claims statute." (*Id.* at p. 1193.)

Finally, the *Wells* court explained ""[t]he ultimate purpose of the [CFCA] is to protect the public fisc"" and "help the government recover public funds of which it was defrauded by outside entities." (*Wells*, *supra*, 39 Cal.4th at pp. 1196, 1201.) But exposing governmental entities "to the draconian liabilities of

9

the CFCA would significantly impede their fiscal ability to carry out their core public missions" and divert limited taxpayer funds "into the pockets of outside parties." (*Id*. at pp. 1193, 1195-1196.) Accordingly, the "Legislature did not intend to subject financially constrained school districts—or any agency of state or local government—to the treble-damages-plus-penalties provisions of the CFCA." (*Id*. at pp. 1196-1197.)

Unlike public school districts, however, the *Wells* court reasoned that charter schools can be operated by "corporations," "limited liability companies," "organizations," or "'associations,'" all of which are included within the definition of "persons." (*Wells*, *supra*, 39 Cal.4th at p. 1200.) The charter schools in *Wells* were operated by non-profit corporations organized under the Nonprofit Public Benefit Corporation Law. (*Id*. at pp. 1200-1201.) Further, the charter schools were "distinct outside entities . . . given substantial freedom to achieve educational results [without] interference by the public educational bureaucracy." (*Id*. at p. 1201.) In addition, "[t]he autonomy, and independent responsibility, of charter school operators extend[ed], in considerable degree, to financial matters." (*Ibid*.) Because charter schools were operated by a nonprofit public benefit corporation, the public school district serving as the chartering authority was not liable for the debts and obligations of the charter schools. Accordingly, the charter schools and their operators could be sued as persons under the CFCA. (*Id*. at p. 1201.)

The same day it decided *Wells,* the Supreme Court held in the companion case, *Harris*, *supra*, 39 Cal.4th 1220, that the City and County of San Francisco (City) was not "a 'person' who *may sue*, as a *qui tam* relator, upon a false claim involving, not its own

funds, but *exclusively funds of the State of California.*" (*Id*. at p. 1223.) The court explained, "Absent contrary indications, we assume the Legislature intended the same meaning of 'person' to delineate both who *may be sued* under the statute, and *who may sue under its qui tam provision*." (*Id*. at p. 1229.) The Court applied its reasoning in *Wells*, elaborating that "the language of the CFCA contains one explicit indication that governmental entities, state or local, are not among the intended class of 'persons' who may sue as qui tam relators. In providing that a qui tam complaint shall be filed under seal . . . , the statute describes such a complaint as one 'filed by a *private* person.' (§ 12652, subd. (c)(2), italics added.)." (*Id*. at p. 1230.) The court rejected the City's argument that use of the terms "'corporation[]'" and "'organization'" in the definition of "'person'" supported a finding that a municipal corporation or government organization was included in the definition. (*Id*. at p. 1232).

2. *The County and District are not "persons" under the CFCA*

We agree with the County defendants that under *Wells, supra*, 39 Cal.4th 1194 and *Harris, supra*, 39 Cal.4th 1220, the County and the District are governmental entities that cannot be sued as "person[s]" under the CFCA.

The County was established by the Legislature on March 11, 1889. (*Los Angeles County v. Orange County* (1893) 97 Cal. 329, 330.) The County, like other counties, is a legal and political subdivision of the state of California under the California Constitution and the Government Code. (Cal. Const., art. XI, § 1, subd. (a) ["The State is divided into counties which are legal subdivisions of the State."]; § 23000 ["A county is the

largest political division of the State having corporate powers."]; § 23002 ["The several existing counties of the State and such other counties as are hereafter organized are legal subdivisions of the State."].)  Similar to the City and County of San Francisco, which the *Harris* court held were governmental entities that could not sue or be sued under the CFCA (*Harris, supra*, 39 Cal.4th at p. 1238), so too the County cannot be sued under the CFCA.

The same holds true for the District, which the Legislature created under the Orange County Flood Control Act of 1927 with the stated purpose of controlling and conserving flood and storm waters and preventing the waters from damaging property. (Stats. 1927, ch. 723, §§ 1, 2 (a), pp. 1325-1326, Deering's Ann. Wat.—Uncod. Acts (1927) Act 730.)  Accordingly, the District is a legal and political subdivision of California.  (*Block v. Citizens Trust & Savings Bank* (1922) 57 Cal.App. 518, 519-520 [describing the District as a "political subdivision of this state" in the context of its commencement of eminent domain action]; *United States v. Certain Parcels of Land, etc.* (S.D. Cal. 1946) 67 F.Supp. 780, 784 [the District is a "political subdivision of the State of California, organized and existing by virtue of the Orange County Flood Control Act"]; see *White v. State of California* (2001) 88 Cal.App.4th 298, 310 ["California Constitution gives the state the power to allocate property tax revenue among the counties and other local agencies and entities," including the District].)

Prince contends the holding in *Wells* is limited to public school districts, and the discussion of whether other governmental entities can be sued under the CFCA is dicta.  But *Wells* held more broadly that governmental agencies are not

12

liable under the CFCA, concluding based on the CFCA's language, history, and purpose "that neither [public school] districts, nor any other agencies of state and local government, are 'persons' subject to suit under the CFCA." (*Wells*, *supra*, 39 Cal.4th at p. 1199.)

Prince's contention that the County and District are "corporation[s]" that fall within the definition of a "person" fares no better. Prince bases his argument on the description in the Government Code of each entity as a "body corporate and politic." (See § 23003 ["A county is a body corporate and politic, has the powers specified in this title and such others necessarily implied from those expressed."]; Orange County Flood Control Act, Stats. 1927, ch. 723, §2 (b), p. 1325, Deering's Ann. Wat.-Uncod. Acts.) ["The Orange County Flood Control District is hereby declared to be a body corporate and politic"].) Contrary to Prince's assertion, mere use of the word "corporate" in the description of an entity does not render it legally equivalent to a private corporation. An entity described as a "body corporate and politic" is more akin to a municipal corporation than a private one. (See 1 McQuillin Mun. Corp. § 1:18 (3d ed.) ["a municipal corporation with a charter and privileges was regarded in English law as a body corporate and politic—an association of individuals joined together to accomplish some lawful purpose"].) And, as discussed, the Supreme Court in *Harris* rejected the City's argument that as a "municipal corporation," the City fell within the definition of a "person" under the CFCA. (*Harris, supra*, 39 Cal.4th at pp. 1232-1233.)

Moreover, other governmental entities created as a "body corporate and politic" are not liable under the CFCA. In *Cordero-Sacks v. Housing Authority of City of Los Angeles* (2011)

13

200 Cal.App.4th 1267, 1273-1274, for example, the court held the Housing Authority of the City of Los Angeles was not a "person" subject to suit for making a false claim because it was a governmental agency despite the fact that the Housing Authority is a "public body corporate and politic." (See Health & Saf. Code, § 34240 ["In each county and city there is a public body corporate and politic known as the housing authority of the county or city."].)

Finally, as the *Wells* court reasoned in finding that charter schools were liable under the CFCA but public school districts were not, the purpose of the CFCA is to help governmental entities recover public funds, not to divert limited taxpayer funds to the coffers of private parties. (*Wells*, *supra*, 39 Cal.4th at pp. 1196-1197.) Subjecting the County and District to CFCA liability would be contrary to the purpose of the CFCA because it would divert taxpayer funds to outside parties and interfere with the County's and District's fiscal ability to carry out their public missions.

3. *Wagner, as a public official sued in his official capacity, is not a "person" who can be sued under the CFCA*

The County defendants argue Donald Wagner is not subject to suit under the CFCA because he is a public official sued for actions taken in his official capacity as the chairman of the County's Board of Supervisors. We agree. *State of California ex rel. Dockstader v. Hamby* (2008) 162 Cal.App.4th 480 is instructive. There, the Court of Appeal affirmed the dismissal of a lawsuit under the CFCA against employees of a school district for actions taken in their official capacities. (*Id.* at pp. 483-484.)

14

The court reasoned that "allowing plaintiffs to substitute the individual [district] employees for the district itself amounts to little more than a pleading device that seeks to circumvent the Legislature's intent to shield public entities from the draconian effects of CFCA." (*Id*. at p. 490.) Prince only sues Wagner in his official capacity, and therefore, because the County cannot be sued under the CFCA, neither can Wagner.

## DISPOSITION

The judgment of dismissal is affirmed. The County defendants are to recover their costs on appeal.


FEUER, J.


We concur:



SEGAL, Acting P. J.



STONE J.